*In re* TYRONE JAMES, a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Tyrone James, Respondent-Appellant).

Fourth District   No. 4—89—0118

Opinion filed December 5, 1989.

William D. Reid, of Elmore & Reid, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

After a hearing in the circuit court of Sangamon County, the trial court ordered respondent involuntarily admitted to a mental health facility. The court found respondent was mentally ill, and because of his illness, likely to inflict serious physical harm upon another. (Ill. Rev. Stat. 1987, ch. 91½, par. 1—119(1).) Respondent appeals arguing the trial court's findings were not supported by clear and convincing evidence; and the trial court erred in ordering his involuntary admission prior to considering a report, as required by section 3—810 of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1987, ch. 91½, par. 3—810).

We reverse and remand.

On January 10, 1989, Patricia Brown, a mental health specialist, filed a petition asserting respondent was a person subject to involuntary admission. The petition alleged respondent was mentally ill and reasonably expected to inflict harm upon himself or another in the near future. The petition further asserted immediate admission was necessary to prevent such harm. The petition asserted respondent

was paranoid, exhibited flight of ideas, a flat affect, had not taken his medication since December 28, 1988, and had threatened to beat or kill his mother.

A hearing was held on January 13, 1989. Dr. Carey Killian, a psychiatrist, testified that he had known respondent since January 10, 1989. He was respondent's attending physician. In his opinion, respondent was suffering from schizophrenia. Killian based his opinion upon examination of respondent, consideration of his medical records, and prior diagnosis of schizophrenia. Respondent displayed several indicia of schizophrenia, including (1) loss of level of functioning over time; (2) formal thought disorder, shown by his wandering from topic to topic; (3) delusional ideas, which included the beliefs that (a) his biological mother is not his mother, (b) dead people walk around with the living and he can tell who is actually alive, and (c) people are giving him bad foods; and (4) a constriction of amount of facial expression when respondent is interacting with other people.

Killian stated that respondent had threatened to harm his mother again because she hospitalized him. Respondent made similar statements to several mental health professionals. Killian believed a significant risk existed that respondent would inflict serious physical harm upon his mother because of his mental illness. Killian further stated that the treatment plan for respondent is to use antipsychotic medication. Respondent had received similar medication in the past and responded well. Killian further testified there were no forms of treatment less restrictive than hospitalization. Killian admitted the medications could be taken on an outpatient basis. Respondent had not been violent while hospitalized.

Respondent testified in his own behalf. He stated that he would take his medication, except one type, on an outpatient basis. Respondent believed his mother lied to force him into the hospital, bothered him, and sent the police to arrest him. His former psychiatrist's nurse tried to give him an overdose of medication. Respondent stated he would only harm someone in self-defense.

■■■ Section 1—119(1) of the Code (Ill. Rev. Stat. 1987, ch. 91½, par. 1—119(1)) provides a person is subject to involuntary admission if he is mentally ill and, because of his mental illness, is reasonably expected to inflict serious harm upon himself or another. In a proceeding on a petition for involuntary admission, the State is required to prove the necessary allegations of the petition by clear and convincing evidence. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) The factual basis for the medical opinion upon which the decision to commit is based must be judged by a similar stand-

ard. (*People v. Sansone* (1974), 18 Ill. App. 3d 315, 309 N.E.2d 733.) The State must present explicit medical testimony that respondent, because of his illness, poses a serious danger to himself or another. (*In re Orr* (1988), 176 Ill. App. 3d 498, 531 N.E.2d 64.) Mental illness alone does not justify involuntary commitment. However, prediction of future dangerousness is inexact. A commitment will be upheld where there is a reasonable expectation that respondent will engage in dangerous conduct within the meaning of the Code. *Orr*, 176 Ill. App. 3d 498, 531 N.E.2d 64; *In re Rogers* (1985), 133 Ill. App. 3d 524, 478 N.E.2d 1198; *In re Powell* (1980), 85 Ill. App. 3d 877, 407 N.E.2d 658.

■ In the instant case, Killian's diagnosis was supported by explicit testimony concerning his observations of respondent. Respondent had expressed several delusional beliefs. Additionally, he threatened to seriously harm his mother if released. The trial court's determination is supported by clear and convincing evidence.

Respondent next argues the trial court erred in ordering his involuntary admission absent consideration of a report before disposition as required by section 3—810 of the Code. (Ill. Rev. Stat. 1987, ch. 91½, par. 3—810.) The State concedes the record does not establish such a report was compiled or considered by the trial court before disposition. However, the State argues respondent waived any objection to the lack of a report. Second, the State argues any error was harmless.

■ Section 3—810 of the Code states:

"Before disposition is determined, the facility director or such other person as the court may direct shall prepare a report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. The treatment plan shall describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected timetable for their attainment. If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." Ill. Rev. Stat. 1987, ch. 91½, par. 3—810.

In *In re Collins* (1981), 102 Ill. App. 3d 138, 429 N.E.2d 531, this court reversed an order finding Collins was subject to involuntary admission. The appellate court found the trial court erroneously failed to suppress the testimony of examining physicians who failed to advise Collins of his right not to talk to the examiner. (Ill. Rev.

Stat. 1987, ch. 91½, par. 3—208.) The court addressed the agency's failure to comply with section 3—810 of the Code, though the absence of a report was not raised by the parties as an issue. The court stated:

"The aforementioned statute requires that the trial court consider this report prior to any disposition. Nowhere in the record is there any evidence that such a report was ever prepared or considered by the trial court. Though this issue is not raised by respondent, and is not necessary to the disposition of this case, it is but one further indication that certain staff within the Department of Mental Health are performing their duties with either callous or blithe disregard for the rules. Such a situation cannot be condoned." *Collins*, 102 Ill. App. 3d at 145, 429 N.E.2d at 537.

■ Involuntary commitment procedures represent the balance between an individual's liberty interests and society's dual interests in protecting itself from potentially dangerous individuals while protecting and caring for those who are unable to care for themselves. (*Stephenson*, 67 Ill. 2d 544, 367 N.E.2d 1273.) Thus, the procedures set forth in the Code are a legislative recognition that civil commitment is a deprivation of personal liberty. The purpose of the procedures is to provide adequate safeguards against unreasonable commitment. (*Sansone*, 18 Ill. App. 3d at 322, 309 N.E.2d at 738.) Inherent in the civil commitment process is the State's promise that the individual subject to admission will receive treatment. (See generally *Collins*, 102 Ill. App. 3d 138, 429 N.E.2d 531; *Sansone*, 18 Ill. App. 3d 315, 309 N.E.2d 733.) We agree with the *Collins* court's conclusion that a total failure to comply with the section evidences a disregard for the legislatively established procedures. It is contrary to the balancing of interests established by the Code and should not be condoned.

Section 3—810 of the Code requires the facility director or other court-appointed person to prepare a report. The preliminary report must include information on the appropriateness and availability of alternative treatment facilities, a social investigation of the respondent, and a preliminary treatment plan. The section states as well that the treatment plan shall describe respondent's problems and needs, goals, the treatment method, and a projected timetable. The State concedes no evidence of a report exists here.

■ The State relies on *In re Meek* (1985), 131 Ill. App. 3d 742, 476 N.E.2d 65. In *Meek*, respondent argued that the decision to commit him was made with insufficient information because of a lack of

detail in the preliminary report. On appeal, the court found respondent waived his objections to the report by failure to object below. In so finding, the court noted the statute does not require a detailed report. Our holding today in no way detracts from *Meek*. Here, a total failure to comply with the statute exists. Involuntary commitment proceedings affect important liberty interests. Thus, the need for strict compliance with the statutes is essential. (*In re Stone* (1989), 178 Ill. App. 3d 1084, 534 N.E.2d 213.) Even when such an error is not brought to the attention of the trial court, it may be considered under a doctrine analogous to plain error. *Stone*, 178 Ill. App. 3d 1084, 534 N.E.2d 213; *In re Satterlee* (1986), 148 Ill. App. 3d 84, 499 N.E.2d 101.

The State also contends any error was harmless since Killian testified medication was the treatment plan and hospitalization was the least restrictive setting. Section 3—810 requires more than the formulation of a treatment plan and statement of least restrictive setting. It also requires a timetable and consideration of other factors. Additionally, on this record, we do not know whether Killian is a person authorized to compile a preliminary report pursuant to section 3—810 of the Code. Strict compliance with the statutes is essential in involuntary commitment proceedings. (*Stone*, 178 Ill. App. 3d 1084, 534 N.E.2d 213.) We cannot say error in discarding the statute's requirements was harmless.

For the above reasons, we reverse the trial court and remand for a new hearing wherein the court will consider a report as required by section 3—810 of the Code.

Reversed and remanded.

KNECHT, P.J., and SPITZ, J., concur.