*In re* DAVID WEIMER (The People of the State of Illinois, Petitioner-Appellee, v. David Weimer, Respondent-Appellant).

Second District No. 2—90—0937

Opinion filed October 7, 1991.

William E. Coffin, of Guardianship & Advocacy Commission, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Respondent, David Weimer, appeals from an order of the circuit court of Kane County finding him to be a person subject to involuntary admission to the Department of Mental Health and Developmental Disabilities (Department). Respondent contends that the statutory provisions for involuntary commitment proceedings were not followed and that, therefore, the court's order is void for want of subject matter jurisdiction and must be reversed. Specifically, respondent asserts that: (1) he was not served with notice pursuant to valid court direction, (2) the record contains no evidence that he made a written request for discharge or that the petition and certificates were filed before the prescribed deadline, and (3) the trial court failed to specify the least restrictive determinate period of involuntary hospitalization. Additionally, respondent argues reversal is required because the State failed to prove by clear and convincing evidence that he was unable to provide for his basic physical needs so as to guard himself from serious harm.

On August 7, 1990, the State filed its petition and two psychiatrists' certificates, pursuant to requirements of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1989, ch. 91½, par. 1—100 et seq.), seeking respondent's involuntary admission to a mental health facility. The reason given on the petition for its initia-

tion was: "Voluntary patient submitted written notice of desire to be discharged." The petition alleged that respondent was a mentally ill person who, because of his mental illness, was reasonably expected to inflict serious physical harm upon himself or another in the near future, was unable to provide for his basic physical needs so as to guard himself from serious harm, and was in need of immediate hospitalization for the prevention of such harm. On the same day as the filing of the petition and certificates, a notice of hearing was prepared and served upon respondent, who was residing at the Elgin Mental Health Center (Center), advising respondent of the time and place of the hearing. The notice was prepared and served by an employee of the medical records department at the Center.

On August 10, 1990, the court held a hearing on the petition to involuntarily admit respondent. Respondent and his counsel appeared at the hearing. Testifying for the State, as its first and only witness, was Dr. Elane Nicola, a psychiatrist. Dr. Nicola testified that she had conducted an examination of respondent, reviewed his current and past Department charts, and had discussions with his caseworkers and people who worked with him on his ward. Based on this information, Dr. Nicola opined that respondent was mentally ill and diagnosed his condition as: "Axis One, chronic schizophrenia undifferentiated, alcohol abuse; Axis Two, dependent personality, Access [sic] Three, obesity and bulimia by history."

Dr. Nicola testified that respondent's schizophrenia manifested itself on a chronic basis with negative symptoms such as poor insight into his problems, lack of motivation to change, and poor grooming. Additionally, respondent at times had more acute symptoms such as hallucinations, withdrawals to the point of not speaking, and aggression. Dr. Nicola stated that respondent was not presently suffering from hallucinations but had suffered in the past. Typically, according to the doctor, the hallucinations were associated with respondent's alcohol abuse. Dr. Nicola stated that respondent's drinking produced severe mental symptoms and dangerous behavior.

The doctor testified that respondent had previously been released 22 times from a Department hospital and that he had a history of noncompliance with outpatient treatment. Dr. Nicola stated that each time respondent returned to the hospital he was in a similar state as he had been on the prior admission, i.e., "Drunk, aggressive, hallucinating." Based upon respondent's past history, his lack of motivation to change, and his lack of insight to see that changes were needed, the doctor opined that respondent was reasonably expected to inflict serious physical harm upon himself or another in the near future.

Dr. Nicola stated that respondent was dependent upon other people to care for his basic needs, either his family or an institution, and that he was incapable of functioning on his own. In the doctor's opinion respondent could not provide for his basic needs so as to guard himself from serious harm, and the Center was the least restrictive environment for respondent at the present time. According to Dr. Nicola, a treatment plan had been developed for respondent, consisting of medication to maintain his "hallucination-free or psychotic-free state," thought therapy to help motivate respondent, drug counselling to help him deal with his alcohol problem, and instruction in personal hygiene and grooming.

On cross-examination Dr. Nicola stated that during his present admission respondent had not been a harm to himself or anyone else, but he had twice been put in restraints. The doctor testified that she had noticed no improvement in respondent's motivational activity or his motivation to participate and that she did not believe he could be released from the Center in the near future. To be released, respondent would have to be taking his medication and showing some ability to care for himself.

Respondent testified on his own behalf. He promised that he would take his medication if he was released from the hospital and that he would stay away from alcohol. If released, respondent planned to attend Lincoln Tech. According to respondent, the school would locate housing for respondent. In the meantime, respondent would reside at the Elmhurst Inn Hotel.

On cross-examination, respondent acknowledged that he had been in the hospital on prior occasions. He also acknowledged that in the past he had agreed to take his medication when released but that he had "never followed through with it."

The court found respondent to be mentally ill and that, because of his mental illness, he was unable to provide for his own basic needs so as to guard himself from serious harm. After reviewing the written treatment plan for respondent, the court found the Department to be the least restrictive environment for respondent and ordered his involuntary admission to the Center. This appeal ensued.

We address only that issue which we consider determinative here, *i.e.*, respondent's contention that, contrary to the Code, the record contains no evidence that he made a written request for discharge and that, therefore, the trial court's order for involuntary admission is void.

▉ It is undisputed that respondent was voluntarily admitted to Elgin Mental Health Center on January 1, 1990. Section 3—403 of the

Code pertains to the discharge of voluntary patients and provides in pertinent part:

> "A voluntary patient shall be allowed to be discharged from the facility at the earliest appropriate time, not to exceed 5 days, excluding Saturdays, Sundays and holidays, after he gives any treatment staff person written notice of his desire to be discharged unless he either withdraws the notice in writing or unless within the 5 day period a petition and 2 certificates conforming to the requirements of paragraph (b) of Section 3—601 and Section 3—602 are filed with the court." Ill. Rev. Stat. 1989, ch. 91½, par. 3—403.

██ No evidence exists in the record to show that respondent asked to be discharged as a voluntary patient pursuant to section 3—403. Although, as respondent points out, the executor of the petition for involuntary commitment indicated thereon that respondent had made a written request for discharge, we find that the petition, like the accompanying psychiatrists' certificates, serves only as a showing of probable cause to initiate the hearing as a basis for temporary emergency hospitalization and is not evidence. (See *In re Evans* (1980), 86 Ill. App. 3d 263, 266.) Without evidence of respondent's written request for discharge, the circuit court's order for involuntary admission was void for want of statutory authority. The fact that respondent did not raise this issue in the trial court did not constitute a waiver of the issue, as no necessity exists to challenge a void order to preserve the point on appeal. *In re Hays* (1983), 115 Ill. App. 3d 686, 689.

The State has moved to supplement the record on appeal with evidence of respondent's written request for discharge, and respondent has filed objections thereto. We ordered the motion and objections to be taken with the case. We agree with respondent's position that permitting the State to provide on appeal evidence which was needed to render the trial court's commitment order valid would have the effect of eroding the procedural protections afforded mental health respondents. As our supreme court recently stated in *In re Splett* (1991), 143 Ill. 2d 225, section 3—403 of the Code "is designed to protect a voluntarily admitted patient from losing control over his status, and we believe that the legislature intended that the requirements of this statute be adhered to strictly." (143 Ill. 2d at 236.) That adherence includes, in our view, that evidence of respondent's written request for discharge be part of the record at the time of the involuntary admission hearing and not added at some later point in time after the

court's commitment order has been entered. We, therefore, deny the State's motion to supplement the record.

Because of this determination we need not consider the propriety of the State's Attorneys Appellate Prosecutor's act of requesting a copy of respondent's written discharge from the Department.

Accordingly, as the record contains no evidence of respondent's written request for discharge pursuant to section 3—403 of the Code, the trial court's order for respondent's involuntary admission to a mental health facility is reversed. We note that reversal of the involuntary admission order will simply restore respondent to his original status as a voluntary patient.

In accord with the reasons set forth above, the order of the circuit court of Kane County is reversed.

Reversed.

DUNN and McLAREN, JJ., concur.