Filed 11/9/09             NO. 4-08-0810

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: ROBERT F., a Person Found Subject to Involuntary Admission, | ) | Appeal from |
| | ) | Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Sangamon County |
|     Petitioner-Appellee, | ) | No. 08MH765 |
|     v. | ) | |
| ROBERT F., | ) | Honorable |
|     Respondent-Appellant. | ) | Esteban F. Sanchez, |
| | ) | Judge Presiding. |

_____

JUSTICE APPLETON delivered the opinion of the court:

Respondent, Robert F., appeals from the trial court's order finding that he was a person subject to involuntary admission and ordering him to be treated for his mental illness for a period not to exceed 90 days at Springfield Terrace Nursing Home pursuant to an agreement for alternative treatment. Because the court's order complied with neither the statute governing involuntary admissions (405 ILCS 5/2-107.1 (West 2008)), nor the statute governing agreed orders for alternative treatment (405 ILCS 5/3-801.5 (West 2008)), we vacate the order as void for want of statutory authority.

I. BACKGROUND

Respondent, a 56-year-old man, has had a long history of mental illness and has been the subject of prior orders of involuntary admission. On October 10, 2008, respondent's case coordinator filed a petition for continued involuntary admission at McFarland Mental Health Center (McFarland) pursuant to section 3-813 of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3-813

(West 2008)). The petitioner alleged respondent was a person subject to continued involuntary admission because (1) due to his mental illness, he was reasonably expected to engage in dangerous conduct (405 ILCS 5/1-119(1) (West 2008)) and (2) the nature of his mental illness prevented him from understanding his need for treatment and, if he was not treated, he was reasonably expected to suffer or continue to suffer mental deterioration or emotional deterioration, or both, to the point that he was reasonably expected to engage in dangerous conduct (405 ILCS 5/1-119(3) (West 2008)). Attached to the petition were certificates of examination prepared by Dr. A. M. Eberhardt and McFarland's Clinical Director, Greg Coughlin.

The same day, Coughlin filed a petition for alternative treatment, alleging that respondent's condition had improved since July 2008, when the last order of involuntary commitment was entered against him. The petitioner requested that the trial court consider placement in an intermediate care facility or a 24-hour supervised group home. Also filed was an agreement for alternative treatment signed by respondent's sister and guardian, a psychiatrist, Coughlin, and the admissions coordinator at Springfield Terrace Nursing Home. The agreement provided that, in lieu of hospitalization, respondent would (1) take his prescribed medications, (2) comply with prescribed lab work, (3) meet with his psychiatrist, (4) meet with staff for follow-up appointments, (5) comply with treatment or risk a return to McFarland, and (6) reside at the facility or another facility approved by his guardian. On the line designated for respondent's signature, the clinical director noted that "[Respondent] chose not to sign."

On October 17, 2008, the trial court conducted a hearing on the petition for involuntary admission. The State moved to amend the petition to include the

allegations that respondent was a person subject to involuntary admission because (1) due to his mental illness, he was unable to provide for his basic physical needs so as to guard himself from serious harm without the assistance of family or outside help and (2) he was in need of immediate hospitalization for the prevention of such harm. Without objection, the court allowed the amendment.

Respondent's treating psychiatrist at McFarland, Dr. Kasturi Kripakran, testified as the State's expert witness. She said respondent was diagnosed with schizophrenia and has suffered from delusions and paranoia. Although respondent has demonstrated some improvement with treatment, he recently reverted to threatening Dr. Kripakran. According to Dr. Kripakran, respondent does not believe he has a mental illness or that he needs medication. But, in her opinion, continuing respondent's treatment would be in his best interest.

The State posed the following question to the doctor:

"Q. Doctor, do you have an opinion within a reasonable degree of psychiatric certainty whether because of his mental illness he is reasonably expected to engage in dangerous conduct, which may include threatening behavior or conduct that places that person or another individual in reasonable expectation of being harmed? Do you have an opinion as to that?

A. Yes, I do.

Q. And what is your opinion?

A. I do believe that he is a danger if he does not con-

tinue treatment.

Q. And what factual basis do you have for your opinion?

A. Based on his past history and his past repeated hospitalizations for similar other episodes of aggression.

Q. When you describe his past history, does he have a long history of violence?

A. Yes."

Dr. Kripakran testified that on September 19, 2008, respondent told her "he had a KPO order against [her], which means kill to protect order." He also told the doctor he had "people who could carry out his order." In her opinion, respondent's mental illness prevented him from caring for his basic physical needs without assistance. She said in the last several years, respondent has resided only in nursing homes or McFarland. She said, to a reasonable degree of psychiatric certainty, she believes respondent is unable to understand his need for treatment and without treatment, he will suffer or continue to suffer mental or emotional deterioration. If he deteriorates, he will be reasonably expected to engage in dangerous conduct. Dr. Kripakran said she considers respondent in need of continued treatment for the prevention of harm to himself or others.

The prosecutor introduced the written agreement for alternative treatment, which was marked and introduced into evidence as exhibit No. 1. Dr. Kripakran described Springfield Terrace as the least-restrictive environment for respondent's treatment.

On cross-examination, Dr. Kripakran said respondent had lived in an apartment on his own several years ago, but that "failed because of his delusional beliefs." He had collected feces and urine in the apartment and was evicted.

Dr. Kripakran recommended for respondent a nursing home rather than McFarland because "he has not shown any dangerous behavior, and he has been able to take care of his ADLs [(activities of daily living)] with supervision." She opined that if he did well in the nursing home and continued his treatment and medication, he had a good chance of succeeding in an independent environment in the community.

Respondent testified on his own behalf as follows:

"Q. There's a proposal today to have you live at Springfield Terrace Nursing Home--

A. Uh-huh.

Q. --for a period of not to exceed 90 days.

A. Uh-huh.

Q. What do you think about that?

A. Well, the ADLs that they spoke of, I can take care of myself. I take showers on my own, and I can eat on my own. I can cook for myself. I have done it before.

The--evidently, I was in the apartment in 2004, and I was having fun walking across the street. I was acting like (indicating), you know, a little curtsy, having fun and going across the street, and somebody saw me doing that. I was just having a good time.

Q. So is it your belief that—

A. I wasn't doing anything.

Q. --you could live in an apartment right now?

A. Yes. But somebody saw me doing it, and they didn't like it, so they filed a petition to admit me. That's how I ended up here in '04. And I have been going in and out of nursing homes since October '04.

Q. Has that been helpful to you?

A. No, not at all. It's a strain. It's stressful. I give other people freedom. I don't understand why people don't give me freedom.

Q. Do you have an apartment you would go live in if you left here today?

A. Not that I know of, not right now. It would have to be arranged.

* * *

Q. Bob, if you were to be in the nursing home and did well, would you--do you think it would be possible for you to live in the community?

A. Well, what--what the doctor said was--and Scott said was about mental deterioration. That happens with the Haldol over a period of time when someone doesn't need it. And the stress and the brain, I want my own freedom. Plus

the Haldol Decanoate, it can cause a little bit of deterioration. Yes, it can.

Q. So you believe the medications are harming you at this particular time?

A. Yes, I do. Right now they are. I have my--I don't have anything in the city–

Q. Would you agree to live at Springfield Terrace–

A. Yeah.

Q. --for a little while?

A. Yeah. I can go for a little while. They need to correct what they did to me because they filed a wrong complaint against me and put me in here."

Both parties rested. After considering the evidence and arguments of counsel, the trial court found as follows:

"The [c]ourt finds that the petition has been proved by clear and convincing evidence.

In particular, the [c]ourt finds that [respondent] is a person who is suffering from mental illness, and as a result of his illness, he is unable to provide for his basic physical needs so as to guard himself from serious harm without the assistance of his family or outside help.

Moreover, I find that he--as a result of his illness, he's unable to understand the need for treatment as testified. He

doesn't believe that he needs medication. And if not treated, he's reasonably expected to suffer or continue to suffer mental deterioration or emotional deterioration or both to the point that he is reasonably expected to engage in dangerous conduct.

In light of the doctor's testimony that he has not been dangerous in the recent weeks, I find that as of today there is insufficient evidence to establish by clear and convincing evidence that he is expected to engage in dangerous conduct at the present time.

I find that he's subject to hospitalization or to treatment at a facility. In this particular case, I'm going to honor that agreement of all the parties and order that he be hospitalized in the care of Springfield Terrace here in Springfield, Illinois, under the agreement. And the agreement is incorporated as part of this order, and that that stay at Springfield Terrace shall not exceed 90 days."

The court entered a written order consistent with his oral pronouncement. This appeal followed.

## II. ANALYSIS

Respondent claims section 1-119(3) of the amended Mental Health Code (405 ILCS 5/1-119(3) (West 2008)), which provides one definition of a person subject to involuntary admission, is unconstitutional as violative of the due-process clause and is

- 8 -

impermissibly vague. Before delving into the constitutional standards of who qualifies as a person subject to involuntary admission under the Mental Health Code, we are mindful of the supreme court's admonition regarding constitutional questions. The court has repeatedly stated that "cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort." In re E.H., 224 Ill. 2d 172, 178, 863 N.E.2d 231, 234 (2006). Finding that this requirement "seem[ed] to fall not infrequently on deaf ears," the court added specific requirements within the supreme court rules to address the court's admonition. E.H., 224 Ill. 2d at 178, 863 N.E.2d at 234; 210 Ill. 2d R. 18(c)(4) (eff. September 1, 2006). Complying with the supreme court's admonition and the dictates of Rule 18, we have found the issues presented here can be resolved on nonconstitutional grounds. Therefore, we will not discuss, in the context of this case, the constitutionality of section 1-119(3) (405 ILCS 5/1-119(3) (West 2008)).

We note this case, like the majority of involuntary-admission cases where the orders extend for only 90 days, is moot. Ordinarily, we are precluded from reviewing moot issues because we are unable to provide any meaningful relief. However, we may review moot issues if they qualify for review under the public-interest exception to the mootness doctrine. We find this case falls within the exception due to the following criteria: "(1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and (3) the likelihood that the question will recur." In re Mary Ann P., 202 Ill. 2d 393, 402, 781 N.E.2d 237, 242-43 (2002).

The procedures that must be followed before an individual, who is

suffering from a mental illness, is ordered to be involuntarily admitted for treatment is a matter of public concern. Mary Ann P., 202 Ill. 2d at 402, 781 N.E.2d at 243. That concern, coupled with the nature of the order entered in this case, satisfies this court that the requirements for review are appropriate as an exception to the mootness doctrine. This is not simply a case reviewing the sufficiency of the evidence. Instead, this case presents an issue of statutory interpretation that affects the procedural requirements of a respondent's admission for treatment under the Mental Health Code. See In re Alfred H.H., 233 Ill. 2d 345, 356, 910 N.E.2d 74, 81 (2009). The statute at issue is a relatively new piece of legislation and has been discussed in only one published opinion (see In re Michael H., 392 Ill. App. 3d 965, 975-79, 912 N.E.2d 703, 711-14 (2009)). Therefore, an authoritative determination regarding the interpretation of this statute will be helpful in the future guidance of public officers. See In re Phillip E., 385 Ill. App. 3d 278, 282, 895 N.E.2d 33, 39 (2008). And, due to the short duration of an order for an involuntary admission, the issues raised here are likely to recur without an opportunity for appellate review.

For the reasons that follow, we find the trial court lacked the statutory authority to enter the type of order entered in this case. In its order, the trial court (1) found respondent subject to involuntary admission, and (2) incorporated an agreement for alternative treatment. These two remedies are mutually exclusive and possess their own procedural requirements within the Mental Health Code. We will review the procedural requirements for each remedy below, keeping in mind the following:

> "The procedural safeguards enacted by the legislature are not
> mere technicalities. Rather, they are intended to safeguard

the important liberty interests of the respondent which are involved in mental[-]health cases. \*\*\*

\*\*\*

\*\*\* The total disregard for the legislatively established procedures is contrary to the balancing of interests established by the [Mental Health] Code and should not be condoned." In re Luttrell, 261 Ill. App. 3d 221, 230, 633 N.E.2d 74, 81-82 (1994).

A. Procedural Requirements for Involuntary Admission

Involuntary admission into a mental-health facility involves a "'massive curtailment of liberty.'" In re Barbara H., 183 Ill. 2d 482, 496, 702 N.E.2d 555, 561 (1998), quoting Vitek v. Jones, 445 U.S. 480, 491, 63 L. Ed. 2d 552, 564, 100 S. Ct. 1254, 1263 (1980). In this vein, the legislature enacted the Mental Health Code, which sets forth specific procedures that will serve to protect the respondent's interests in order to "ensure that Illinois citizens are not subjected to such services improperly." Barbara H., 183 Ill. 2d at 496, 702 N.E.2d at 561-62. A petition for involuntary admission must assert that the respondent is suffering from a condition that requires immediate hospitalization in order to protect himself or others from harm. 405 ILCS 5/3-601(a) (West 2008). The petition must be supported by two certificates of examination. 405 ILCS 5/3-703 (West 2008). The trial court must conduct a hearing within five days of the petition being filed. 405 ILCS 5/3-611 (West 2008). At the hearing, the respondent has a right to counsel (405 ILCS 5/3-805 (West 2008)), the right to be present (405 ILCS 5/3-806(a) (West 2008)), and the right to a jury trial (405 ILCS 5/3-802 (West

2008)).  The State must prove the allegations in the petition by clear and convincing evidence.  405 ILCS 5/3-808 (West 2008).

An initial order for involuntary admission is of short duration; it is valid for only 90 days.  405 ILCS 5/3-813(a) (West 2008).  Despite the short duration, an order for involuntary admission into a hospital is a serious deprivation of the respondent's liberty in that it (1) subjects him to psychiatric care that he presumably does not want to receive, and (2) restricts his ability to come and go as he wishes.  Michael H., 392 Ill. App. 3d at 972, 912 N.E.2d at 709.  "Thus, the procedures set forth in the Code are a legislative recognition that civil commitment is a deprivation of personal liberty.  The purpose of the procedures is to provide adequate safeguards against unreasonable commitment."  In re James, 191 Ill. App. 3d 352, 356, 547 N.E.2d 759, 761 (1989).

B.  Procedural Requirements for Agreed Orders for Treatment

On the other hand, a respondent who agrees to admission at an outpatient-alternative-treatment facility cannot be subject to involuntary admission.  See 405 ILCS 5/3-801.5(d) (West 2008).  There is an inherent inconsistency in the concept of agreeing to something that is involuntary.  See Michael H., 392 Ill. App. 3d at 973, 912 N.E.2d at 710.  In 2006, our legislature enacted section 3-801.5 (405 ILCS 5/3-801.5 (West 2008)) to address agreed orders for outpatient treatment.  The statute provides that (1) the trial court must be satisfied that the agreement is in the respondent's and the public's best interests (405 ILCS 5/3-801.5(a)(1) (West 2008)), (2) the court must advise respondent of the conditions and be satisfied that the respondent understands and agrees to the conditions (405 ILCS 5/3-801.5(a)(2) (West 2008)), (3) the court must advise the

proposed custodian and ensure his agreement (405 ILCS 5/3-801.5(a)(3) (West 2008)), (4) generally speaking, the agreed order may not include a requirement that the respondent be hospitalized (405 ILCS 5/3-801.5(a)(4) (West 2008)), and (5) no order may include the administration of psychotropic medication (405 ILCS 5/3-801.5(a)(5) (West 2008)).

As a limited exception to the no-hospitalization requirement set forth above, the statute does provide that a custodian may have the authority to admit a respondent to a hospital if he fails to comply with the conditions of the agreed order. 405 ILCS 5/3-801.5(b) (West 2008). However, if the respondent is admitted pursuant to such a provision, he must be treated as a voluntary admittee and be immediately advised of his right to request a discharge. 405 ILCS 5/3-801.5(b) (West 2008). Finally, and most importantly, such an agreed order cannot be construed as a finding that the respondent is subject to involuntary admission. 405 ILCS 5/3-801.5(d) (West 2008).

### C. Trial Court's Order

The order in this case found respondent subject to involuntary commitment and, at the same time, incorporated an agreement for voluntary treatment at an alternative treatment facility. The Mental Health Code does not authorize such an order. In fact, the order "flies in the face of this entire statutory scheme." Michael H., 392 Ill. App. 3d at 979, 912 N.E.2d at 714. "If the respondent agrees to be admitted, he must be admitted on a voluntary basis." Michael H., 392 Ill. App. 3d at 979, 912 N.E.2d at 714. A trial court cannot find respondent subject to involuntary admission while, at the same time, setting forth conditions pursuant to an agreement for alternative treatment, conditions that are statutorily prohibited in involuntary-admission proceed-

ings.

The only provision in the Mental Health Code that addresses both an involuntary and voluntary status is section 3-801 (405 ILCS 5/3-801 (West 2008)). There, if a respondent requests voluntary admission at the time a petition for involuntary admission is pending, the trial court may dismiss the petition for involuntary admission upon proof that dismissal would be in the respondent's and the public's best interests. 405 ILCS 5/3-801 (West 2008). If the court determines that the petition should not be dismissed, the case proceeds subject to all procedural safeguards applicable to involuntary-admission cases. See Michael H., 392 Ill. App. 3d at 978-79, 912 N.E.2d at 714. Both proceedings cannot move forward at the same time.

The trial court's order did not satisfy the statutory requirements for involuntary-admission orders. For example, one of the conditions set forth in the agreement incorporated into the order required respondent to "take all his medications as prescribed." This condition is strictly prohibited in involuntary-admission orders. See 405 ILCS 5/2-107 (West 2008) (a respondent has the right to refuse medications). In order to involuntarily administer medications, the court must conduct a separate hearing with separate procedural safeguards. See 405 ILCS 5/2-107.1 (West 2008). No such hearing was conducted in this case. Thus, respondent cannot be ordered to "take all his medications as prescribed" without further inquiry.

Likewise, the trial court's order incorporating an agreement for alternative treatment did not satisfy the statutory requirements for agreed orders. Nothing in the record suggests that respondent agreed to comply with, or was even aware, of the conditions set forth in the order. See 405 ILCS 5/3-801.5(a)(2) (West 2008). Respon-

dent did not sign the document nor was he advised of the specific conditions set forth in the agreement. Respondent agreed to live at Springfield Terrace for "a little while" but that was the extent of his agreement.

Because the trial court's order did not comply with the statutory requirements for either an involuntary-admission order or an agreed order, the order is void for want of statutory authority. In re Weimer, 219 Ill. App. 3d 1005, 1009, 580 N.E.2d 182, 184 (1991). The Mental Health Code makes clear that a respondent cannot be treated as both an involuntary and voluntary patient in the same proceedings. The State argues that this court should simply strike the portions of the agreement that do not comply with orders for involuntary admission. Due to the fundamental liberty interests at stake in involuntary-admission proceedings, we will not pick and choose which of the trial court's requirements implicate respondent's due-process rights and which do not. For the reasons stated, we reverse the order finding respondent to be subject to both involuntary admission and the conditions of the agreement for alternative treatment. In light of this conclusion, we need not consider respondent's additional arguments.

III. CONCLUSION

For the foregoing reasons, we vacate the trial court's judgment as void.

Vacated.

POPE, J., concurs.

MYERSCOUGH, J., specially concurs in part and dissents in part.

MYERSCOUGH, J., specially concurring in part and dissenting in part:

I specially concur in part and respectfully dissent in part. I agree the trial court should not have adopted the "agreed" order for alternative treatment because the court had ordered involuntary commitment and respondent had not agreed to or been advised of a voluntary commitment and the terms set forth in that "agreed" order. However, the court's order is not void in full. The court's involuntary commitment was correct and should stand. This matter should, therefore, be remanded for further hearing on placement.