# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re David M.*, 2013 IL App (4th) 121004

---

| | |
|---|---|
| Appellate Court Caption | In re: DAVID M., a Person Found Subject to Involuntary Admission and Administration of Psychotropic Medication, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. DAVID M., Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-1004 |
| Filed | August 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on a petition seeking respondent's hospitalization in a mental health facility, the trial court did not abuse its discretion in denying respondent's request to transfer the case to his home county and proof that he was subject to involuntary admission was established by clear and convincing evidence, but the order authorizing involuntary treatment with psychotropic medications was reversed due to the State's failure to give respondent timely notice of the petition for such treatment, the failure to conduct a separate hearing on that petition, and the failure to satisfy other statutory requirements for such a request. |
| Decision Under Review | Appeal from the Circuit Court of Adams County, No. 12-MH-76; the Hon. John C. Wooleyhan, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |

Counsel on
Appeal

E. John Clark, of Quincy, for appellant.

Jonathan H. Barnard, State's Attorney, of Quincy (Patrick Delfino, Robert J. Biderman, and Luke McNeill, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Presiding Justice Steigmann and Justice Holder White concurred in the judgment and opinion.

## OPINION

¶ 1  The trial court found respondent, David M., subject to involuntary admission and ordered him hospitalized for no more than 90 days. The same date, it authorized hospital staff to administer psychotropic medication to respondent for a period not to exceed 90 days. Respondent appeals, arguing (1) the court erred in refusing to grant his request to move the proceedings to his home county pursuant to section 3-800(a) of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3-800(a) (West 2010)); (2) the State failed to prove by clear and convincing evidence that he was a person subject to involuntary admission; and (3) reversal of the court's involuntary treatment order is warranted because (a) he was not advised in writing regarding the recommended psychotropic medication as required by section 2-102(a-5) of the Mental Health Code (405 ILCS 5/2-102(a-5) (West 2010)), (b) he was not given proper notice of the petition for administration of psychotropic medication pursuant to section 2-107.1(a-5)(1) of the Mental Health Code (405 ILCS 5/2-107.1(a-5)(1) (West 2010)), and (c) the court failed to conduct a separate hearing on the petition for the administration of psychotropic medication as required by section 2-107.1(a-5)(2) of the Mental Health Code (405 ILCS 5/2-107.1(a-5)(2) (West 2010)). We affirm the court's order for involuntary admission of respondent to a mental-health facility but reverse its order for the administration of psychotropic medication.

¶ 2  I. BACKGROUND

¶ 3  On September 10, 2012, police transported respondent to Blessing Hospital in Adams County, Illinois. The same date, respondent's hospital therapist filled out a petition seeking to have him involuntarily admitted to a mental-health facility. The therapist alleged respondent was a mentally ill person who, unless treated on an inpatient basis, was (1) reasonably expected to engage in conduct placing himself or another in physical harm or in reasonable expectation of being physically harmed or (2) unable to provide for his basic physical needs so as to guard himself from serious harm without the assistance of family or

others. The petition named respondent's brother and sister as witnesses and, as a factual basis for the petition, stated respondent stopped taking medication a year earlier, became paranoid, accused his family of stealing, broke into his brother's trailer, defecated into a cooler, flooded the trailer with natural gas, ran up a large water bill using over 100,000 gallons of water in one month, and barricaded his property.

¶ 4        On September 19, 2012, the trial court conducted a hearing on the matter. It noted a petition for the administration of psychotropic medication had also been filed. The record reflects that petition was prepared by respondent's physician and dated September 19, 2012, but file stamped with the date of September 20, 2012. Respondent's physician alleged respondent refused psychotropic medication and exhibited psychotic, paranoid, bizarre, and dangerous behaviors. The petition further stated the benefits of medication outweighed the harm, respondent lacked the capacity to make a reasoned decision about medication, and other less restrictive services were explored but found inappropriate.

¶ 5        At the hearing, respondent's counsel made an oral motion to transfer the matter to Scott County, respondent's county of residence. In support of the motion, counsel argued the incidents that formed the basis for the involuntary admission petition occurred in Scott County and respondent had no connections with Adams County "other than being *** dumped in this county by Pike and/or Scott County law enforcement." The State indicated it was prepared to proceed with the hearing, noting its expert witness was present and "respondent was transported here due to the fact that [the hospital] is the mental health provider for this region." The trial court denied respondent's motion, stating as follows:

> "There is a provision under the mental health code for a respondent to request that proceedings be transferred to the county of residence. There are also provisions, cases talking about what a proper forum is for a hearing, and the Court has to take those things into consideration also. There's nothing in the record that's been filed so far that would show the names of any witnesses who the respondent would intend to call from Scott County or any other county other than Adams. The record does show that the respondent is currently a patient at a mental health facility in Adams County."

¶ 6        At the hearing, the State presented the expert testimony of Dr. Salvador Sanchez, a psychiatrist at Blessing Hospital. Dr. Sanchez testified he was familiar with respondent as a patient at Blessing Hospital. He clarified that respondent refused to talk with him and, as a result, most of the information he received about respondent was from respondent's sister, Althea Moore. Dr. Sanchez testified respondent was diagnosed with schizoaffective disorder in 1995 and had been treated in the past, including treatment for one year at the Chester Mental Health Facility. He stated respondent quit taking his psychotropic medication approximately one year earlier, resulting in him "becoming paranoid psychotic" and exhibiting bizarre behaviors.

¶ 7        Dr. Sanchez testified respondent used to live with his 82-year-old father but his father became scared of respondent's erratic behavior, was afraid he would be hurt, and moved out. He noted respondent's father would wake in the middle of the night to find respondent staring at him. Dr. Sanchez further testified respondent allowed his brother to move into a trailer on respondent's property. On various occasions, respondent broke into his brother's

trailer, filled the trailer with gas, took food from the refrigerator and threw it in the trash, and defecated in a cooler. On an occasion when his brother was home, respondent repeatedly turned the lights on and off and told his brother he needed to move out or he would be killed.

¶ 8	According to Dr. Sanchez, respondent's other erratic behaviors included stepping in and out of oncoming traffic, placing water bowls in front of cement animals at his home, neglecting his personal care and hygiene, and being obsessed with water. He noted respondent left a sprinkler system running, wasting around 100,000 gallons of water in one month, and left water faucets running when no one was home. Dr. Sanchez also testified respondent believed taking psychotropic medication would cause his death. He stated respondent's conduct of breaking into his brother's trailer, making threats, and stepping into traffic had been ongoing since around June 2012.

¶ 9	Following respondent's hospitalization, Dr. Sanchez had daily contact with him and performed mental status examinations. He diagnosed respondent with schizophrenia and observed respondent to be talking to himself, paranoid, guarded, and suspicious. He strongly suspected respondent heard voices, stating respondent seemed to be talking to imaginary people. Dr. Sanchez testified respondent kept to himself, paced in his room, and was paranoid to the extent that he avoided interaction with peers and staff. Respondent ate meals in his room, kept the doors closed and denied access into his room. Dr. Sanchez noted respondent showed a fixation with water by leaving water faucets open and running and constantly flushing the toilet.

¶ 10	Dr. Sanchez testified respondent had been offered medication while hospitalized. He recommended respondent take Risperdal to treat his schizophrenia but respondent refused, resulting in Dr. Sanchez's request that medication be administered against respondent's will. He stated he observed a deterioration in respondent's ability to function since his hospitalization, noting respondent refused to eat, kept to himself, stayed in his room, and avoided eating meals. Dr. Sanchez stated respondent was "only feeding himself on small portions of cereal and things like that." He also testified that the condition he observed in respondent existed for a period of time marked by the continuing presence of deterioration.

¶ 11	Dr. Sanchez opined the benefits of psychotropic medication would outweigh any harm to respondent. He noted possible side effects of Risperdal included weight gain, sedation, and spontaneous involuntary movements. Benefits included an improvement in the overall level of functioning and decreases in psychosis, paranoia, hallucinations, and bizarre behaviors. Dr. Sanchez believed respondent lacked the capacity to make a reasonable decision regarding medication and that other less restrictive services for respondent had been explored but were found inappropriate. He testified one-on-one therapy and group therapy had been unsuccessful.

¶ 12	Dr. Sanchez also recommended medication called Invega Sustenna, which consisted of a shot in either the gluteal area or arms taken on a regular basis. Side effects and benefits of that medication were the same as those for Risperdal.

¶ 13	Finally, Dr. Sanchez opined respondent was a person with a mental illness who was unable to provide for his basic physical needs. He believed respondent was in need of immediate hospitalization and recommended referral to a state facility for a period not to

exceed 90 days.

¶ 14    The State submitted respondent's medical records from Blessing Hospital as an exhibit. The records contain information consistent with Dr. Sanchez's testimony regarding respondent's history. They state respondent refused to provide much information to hospital staff and most of the information received "was provided indirectly by [respondent's] sister, Althea Moore, on the judicial writ upon which [respondent] was admitted to [the hospital]." Additionally, the records state respondent was admitted to a mental-health facility in 1999, after being found unfit to stand trial on felony charges.

¶ 15    On cross-examination, Dr. Sanchez testified the information he obtained from respondent's sister was in the form of a letter she wrote that was forwarded to him at the time of respondent's hospital admission. He stated he had no personal contact with respondent's sister as the hospital was prohibited by law from contacting respondent's family without his consent and respondent refused to give consent. On redirect, Dr. Sanchez testified the information in Moore's letter, his own observations of respondent, and the observations of hospital staff formed the basis for his diagnosis and opinions. Additionally, he noted the information in Moore's letter was consistent with his own observations.

¶ 16    At the conclusion of Dr. Sanchez's testimony, the parties each presented arguments to the court. During his argument, respondent's attorney noted he had not seen the petition for the involuntary administration of psychotropic medication but presumed it was presented to the trial court that day. Following the parties' arguments, the court determined the petition for involuntary admission had been proved by clear and convincing evidence, finding the evidence showed respondent suffered from a mental illness and, as a result, was unable to provide for his own basic needs. It ordered respondent admitted to a mental-health facility for a period of time not to exceed 90 days. The court also granted the petition for the administration of psychotropic medication, finding it too had been proved by clear and convincing evidence.

¶ 17    This appeal followed.


¶ 18                                    II. ANALYSIS

¶ 19    Here, like with other mental-health cases, respondent's appeal is moot because the underlying orders for involuntary admission and treatment were limited to 90 days and the relevant time periods have passed. "As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351, 910 N.E.2d 74, 78 (2009). Although there is no *per se* exception to mootness which applies to all mental-health cases, recognized exceptions include (1) the public-interest exception, (2) the capable-of-repetition-yet-avoiding-review exception, and (3) the collateral-consequences exception. *Alfred H.H.*, 233 Ill. 2d at 355-61, 910 N.E.2d at 80-83.

¶ 20    On appeal, respondent acknowledges the mootness issue and, in his brief, adequately sets forth the recognized exceptions to that doctrine. Both respondent and the State assert this case falls within the public-interest and capable-of-repetition-yet-avoiding-review exceptions. However, the argument respondent presents in support of his position consists

of only two sentences in which he asserts that mental-health cases "have been consistently held to fall within the public interest exception to the mootness doctrine" and are also "clearly of the nature that they are quite capable of repetition yet evading review." We note that "whether a case falls within an established exception to the mootness doctrine is a case-by-case determination." *Alfred H.H.*, 233 Ill. 2d at 355, 910 N.E.2d at 80. In this instance, respondent's argument is inadequate as he has failed to set forth any reason why an exception to the mootness doctrine should apply to the facts and circumstances of *this particular case*.

¶ 21 Nevertheless, despite respondent's failure, we find his appeal presents an issue that falls within the public-interest exception. "The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *Alfred H.H.*, 233 Ill. 2d at 355, 910 N.E.2d at 80. This exception must be narrowly construed. *Alfred H.H.*, 233 Ill. 2d at 355-56, 910 N.E.2d at 80.

¶ 22 As stated, respondent argues the trial court erred by denying his request to move the proceedings to his county of residence pursuant to section 3-800(a) of the Mental Health Code (405 ILCS 5/3-800(a) (West 2010)). "The procedures that must be followed before an individual, who is suffering from a mental illness, is ordered to be involuntarily admitted for treatment is a matter of public concern." *In re Robert F.*, 396 Ill. App. 3d 304, 311, 917 N.E.2d 1201, 1206 (2009). Further, because we find no recent cases that address the current version of section 3-800(a), an authoritative determination regarding that section of the Mental Health Code will be a useful guide for public officers in the future. Finally, it is also likely this issue could reoccur in the future. See *Robert F.*, 396 Ill. App. 3d at 311, 917 N.E.2d at 1206 ("[D]ue to the short duration of an order for an involuntary admission, the issues raised *** are likely to recur without an opportunity for appellate review.").

¶ 23 The issue of the trial court's compliance with section 3-800(a) falls within the public-interest exception to the mootness doctrine and we will consider the merits of that issue on appeal. Although respondent raises additional issues which may not fall within any recognized exception, because we address his transfer-of-proceedings issue, we choose to also address the merits of his remaining arguments. See *In re A.W.*, 381 Ill. App. 3d 950, 956, 887 N.E.2d 831, 837 (2008) (holding that, where the respondent raised statutory-compliance arguments that were subject to review under the public-interest exception, this court would also consider the merits of the respondent's sufficiency-of-the-evidence claim, which did not fall within a recognized exception to the mootness doctrine).

¶ 24 On appeal, respondent argues the trial court erred in refusing to grant his request to move the proceedings from Adams County to Scott County, his county of residence. With respect to transfer requests, the Mental Health Code provides as follows:

"To the extent practical, hearings shall be held in the mental health facility where the respondent is hospitalized. Any party *may request* a change of venue or transfer to any other county because of the convenience of parties or witnesses or the condition of the respondent. The respondent *may request to have* the proceedings transferred to the county of his residence." (Emphases added.) 405 ILCS 5/3-800(a) (West 2010).

¶ 25 Respondent cites *In re Muro*, 81 Ill. App. 3d 21, 400 N.E.2d 1042 (1980), for the proposition that section 3-800(a) mandates transfer to a respondent's home county upon the respondent's request. However, the State contends section 3-800(a) has been amended since this court's decision in *Muro* and a close reading of that case shows the statutory language applicable to respondent gives the trial court discretion to grant or deny a transfer request. We agree with the State and find no abuse of discretion by the trial court.

¶ 26 At the time of *Muro*, section 3-800(a) of the Mental Health Code provided as follows:

"Unless otherwise indicated, court hearings under this Chapter shall be held pursuant to this Article. *** Any party *may request* a change of venue or transfer to any other county because of the convenience of parties or witnesses or the condition of the respondent. The respondent *may have* the proceedings transferred to the county of his residence." (Emphases added.) Ill. Rev. Stat., 1978 Supp., ch. 91 1/2, ¶ 3-800(a).

Based upon that statutory language, this court concluded "that the plain meaning of section 3-800 mandate[d] the trial court to transfer the case to the county of respondent's residence." *Muro*, 81 Ill. App. 3d at 23, 400 N.E.2d at 1044. This court reasoned that the first provision of section 3-800(a) used the phrase "may request" which "clearly indicate[d] that transfer for those enumerated reasons [was] subject to the trial court's discretion." *Muro*, 81 Ill. App. 3d at 23, 400 N.E.2d at 1044. However, we noted the second provision used the phrase "may have" rather than "may request" and determined "[t]he plain meaning of 'may have,' when read with the statute's preceding provision, indicate[d] that once the respondent request[ed] a transfer to his county of residence, the trial court must order the transfer." *Muro*, 81 Ill. App. 3d at 23, 400 N.E.2d at 1044.

¶ 27 Here, because the statutory language has been amended to state that a "respondent *may request to have* the proceedings transferred to the county of his residence," this court's holding in *Muro* that transfer is mandated is no longer applicable. Instead, as also stated in *Muro*, when "may request" language is used, the trial court has discretion to grant or deny a transfer request.

¶ 28 In this instance, the trial court did not abuse its discretion. The record reflects the hearing took place at Blessing Hospital in Adams County where respondent was being hospitalized. The only witness to testify at the proceedings was Dr. Sanchez, who was employed by the hospital. Although the petition identified respondent's siblings as witnesses and indicated they resided in Scott County, as the court found, there was no indication from the record that respondent intended to call any Scott County residents as witnesses. We note section 3-800(a) states that "[t]o the extent practical, hearings shall be held in the mental health facility where the respondent is hospitalized." 405 ILCS 5/3-800(a) (West 2010). Under these circumstances, the record demonstrates compliance with section 3-800(a) and reveals no abuse of the court's discretion.

¶ 29 On appeal, respondent next argues the State failed to prove by clear and convincing evidence that he was a person subject to involuntary admission. Respondent complains that "vast portions of the State's evidence" were based upon the letter that was not produced at the hearing and that was allegedly authored by his sister, who did not testify. He also challenges Dr. Sanchez's opinions, arguing the factual basis for those opinions was

inadequate to support the trial court's involuntary admission order.

¶ 30    "A petition for involuntary admission must assert that the respondent is suffering from a condition that requires immediate hospitalization in order to protect himself or others from harm." *Robert F.*, 396 Ill. App. 3d at 312, 917 N.E.2d at 1207 (citing 405 ILCS 5/3-601(a) (West 2008)). "The State must prove the allegations in the petition by clear and convincing evidence." *Robert F.*, 396 Ill. App. 3d at 312, 917 N.E.2d at 1207 (citing 405 ILCS 5/3-808 (West 2008)). Proof of a mental illness, by itself, is insufficient to warrant involuntary admission and, "[t]o meet its burden, the State must submit 'explicit medical testimony' that the respondent is reasonably expected to be a serious danger to herself or others as a result of her mental illness." *In re Tommy B.*, 372 Ill. App. 3d 677, 686, 867 N.E.2d 1212, 1221 (2007) (quoting *In re James*, 191 Ill. App. 3d 352, 355, 547 N.E.2d 759, 760 (1989)). "The court need not wait until respondent actually hurts himself or another before involuntarily committing him." *Tommy B.*, 372 Ill. App. 3d at 687, 867 N.E.2d at 1221.

¶ 31    "Because the [trial] court is in a superior position to determine witness credibility and to weigh evidence, we give great deference to the court's findings" (*In re Lisa G.C.*, 373 Ill. App. 3d 586, 594, 871 N.E.2d 794, 802 (2007)) and its decision "will not be overturned unless it is against the manifest weight of the evidence" (*In re Robin C.*, 385 Ill. App. 3d 523, 528, 898 N.E.2d 689, 694 (2008)). "A judgment will be considered against the manifest weight of the evidence 'only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence.' " *In re Elizabeth McN.*, 367 Ill. App. 3d 786, 789, 855 N.E.2d 588, 590 (2006) (quoting *In re John R.*, 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003)).

¶ 32    Here, the State presented the expert medical opinion of Dr. Sanchez. His testimony showed respondent had a history of mental illness and treatment. Dr. Sanchez diagnosed respondent with schizophrenia. Further, he opined respondent was a person with a mental illness who was unable to provide for his own basic physical needs and in need of immediate hospitalization.

¶ 33    Respondent complains that Dr. Sanchez's opinions were based upon written information that was not produced and allegedly obtained from his sister, who did not testify at the hearing. This court has stated that "the underlying factual support of the testifying expert's opinion need not, as a matter of law, be substantively admissible," so long as the expert's opinion is "supported by a sufficient factual basis to render it clear and convincing." *In re Lillie M.*, 375 Ill. App. 3d 852, 856, 875 N.E.2d 157, 161 (2007). Here, Dr. Sanchez testified his opinions were only based, in part, on the information obtained through respondent's sister. He also relied upon his own observations of respondent while respondent was hospitalized and found his observations consistent with the information respondent's sister provided. Dr. Sanchez also relied on the observations of other hospital staff members. In observing respondent, Dr. Sanchez found him to be talking to himself, paranoid, guarded, and suspicious. Respondent kept to himself and avoided interaction with peers or hospital staff. Respondent also refused medication; refused to eat, "feeding himself on small portions of cereal"; denied access to his room; and had a fixation with water.

¶ 34    On appeal, respondent does not challenge the trial court's finding that he suffered from

a mental illness. Additionally, the record contains no evidence contradicting the history relied upon by Dr. Sanchez. We find the evidence sufficient to support the trial court's involuntary commitment order. An opposite conclusion is not apparent and the court's decision was not against the manifest weight of the evidence.

¶ 35    On appeal, respondent additionally challenges the trial court's order authorizing his involuntary treatment with psychotropic medication. Specifically, he contends reversal of that order is warranted because (1) he was not advised in writing regarding the recommended psychotropic medication as required by section 2-102(a-5) of the Mental Health Code (405 ILCS 5/2-102(a-5) (West 2010)), (2) he was not given proper notice of the petition for administration of psychotropic medication pursuant to section 2-107.1(a-5)(1) of the Mental Health Code (405 ILCS 5/2-107.1(a-5)(1) (West 2010)), and (3) the court failed to conduct a separate hearing on the petition for the administration of psychotropic medication as required by section 2-107.1(a-5)(2) of the Mental Health Code (405 ILCS 5/2-107.1(a-5)(2) (West 2010)). The State concedes that the court's order authorizing involuntary treatment should be reversed based upon respondent's failure to receive timely notice of the petition and the court's failure to conduct separate hearings. We accept the State's concession and reverse the court's order.

¶ 36    Initially, the Mental Health Code provides that a petitioner must deliver a copy of the involuntary treatment petition and notice of the hearing to the respondent or his attorney "no later than 3 days prior to the date of the hearing." 405 ILCS 5/2-107.1(a-5)(1) (West 2010). Here, the record shows the petition was filed the same date as the involuntary admission hearing but fails to reflect notice to either respondent or his attorney. Reversal of the involuntary treatment order is warranted on this basis. See *In re B.K.*, 362 Ill. App. 3d 324, 329, 839 N.E.2d 1111, 1115 (2005) (holding the three-day-notice requirement in section 2-107.1(a-5)(1) was violated because the respondent failed to receive both a copy of the petition and notice of the hearing no later than three days prior to the hearing).

¶ 37    Next, the Mental Health Code also requires that a hearing on the involuntary treatment petition be held "separate from a judicial proceeding held to determine whether a person is subject to involuntary admission." 405 ILCS 5/2-107.1(a-5)(2) (West 2010). As the State acknowledges, in the instant case, the record clearly reflects only a single hearing was conducted on both petitions. Reversal of the trial court's involuntary treatment order is also warranted on this basis.

¶ 38    Finally, before psychotropic medication may be involuntarily administered to a respondent, the Mental Health Code requires that he be advised, "in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated." 405 ILCS 5/2-102(a-5) (West 2010). Strict compliance with section 2-102(a-5) "is necessary to protect the liberty interests of the mental-health treatment recipient." *In re Linda K.*, 407 Ill. App. 3d 1146, 1151, 948 N.E.2d 660, 665 (2011). Again, error occurred as the record fails to reflect respondent was advised in writing regarding the proposed medications.

¶ 39    Here, the trial court committed no error in denying respondent's request to transfer

proceedings to his county of residence. Additionally, its involuntary admission order was supported by the record and not against the manifest weight of the evidence. We affirm that order. However, we agree with respondent's contention that the court's involuntary treatment order was entered in violation of various provisions of the Mental Health Code, as discussed, and reverse that order.

¶ 40                                     III. CONCLUSION

¶ 41        For the reasons stated, we affirm in part and reverse in part the trial court's judgment.

¶ 42        Affirmed in part and reversed in part.