*In re* JAMES WILLIAMS, Alleged to be a Person Subject to the Involuntary Administration of Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. James Williams, Respondent-Appellant).

Fifth District    No. 5—98—0404

Opinion filed May 18, 1999.—Rehearing denied June 11, 1999.

John B. Lower, Jeff M. Plesko, and Penelope S. Karnes, all of Guardianship & Advocacy Commission, of Anna, for appellant.

Darrell Williamson, State's Attorney, of Chester (Norbert J. Goetten and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MAAG delivered the opinion of the court:

Respondent, James Williams, appeals from an order of the circuit court of Randolph County granting S.D. Parwatikar, M.D.'s petition to continue to involuntarily administer psychotropic medication to him. On appeal, respondent contends that the court's decision should be reversed because, contrary to the Mental Health and Developmental Disabilities Code (405 ILCS 5/1—100 *et seq.* (West 1996 & Supp. 1997)) (the Code), the order did not specify the medications and the anticipated range of dosages that were authorized, and because the petition was defective in that it did not allege that petitioner made a good-faith effort to determine the existence of a power of attorney for health care or mental health treatment. Respondent also alleges that the order should be reversed because the State failed to prove by clear and convincing evidence that the benefits of the medication outweigh the harm.

A brief rendition of the pertinent facts follows. Respondent was diagnosed with paranoid schizophrenia in the early 1970s. After being charged with attempted murder in Cook County, Illinois, respondent was judged unfit to stand trial and was turned over to the Elgin State Mental Health Center. On June 23, 1995, respondent was transferred from Elgin to the Chester Mental Health facility in Randolph County, Illinois.

During his stay at the Chester Mental Health facility, respondent refused to be treated with psychotropic medications. A staff psychiatrist petitioned for and secured a court order on April 1, 1998, for the involuntary administration of psychotropic medications. Pursuant to that order, respondent received an antipsychotic medication, Prolixin, in doses of 40 milligrams, twice a day. On June 10, 1998, Chester staff psychiatrist S.D. Parwatikar, M.D., petitioned the court for an order authorizing him to continue to involuntarily medicate respondent. In his June 25, 1998, evaluation, Dr. Parwatikar wrote:

> "It is requested that an order authorizing continuation of the enforced medications for up to 90 days be given, to monitor blood testing which is essential for safe and effective administration of psychotropic medications. The proposed medications are: Prolixin by mouth up to the dosage of 100 mg per day, Prolixin Deconate injections up to 100 mg every two weeks, Haldol up to 100 mg per

day, [and] Haldol Dec 300 mg IM every month (Haldol will only be used if Prolixin and Prolixin Dec does [sic] not seem to be efficacious in reducing delusions). It is also requested that an order for Cogentin up to 8 mg a day or Artane up to 15 mg a day be also entered to allow medications for side effects.

It is this writer's intention to place him on antidepressant medications such as Prozac up to 40 mg a day [and] Paxil up to 40 mg a day, since these antidepressant medications sometimes relieve the anxiety due to obsessive rumination about somatic conditions."

Dr. Parwatikar diagnosed respondent with paranoid schizophrenia. He stated that respondent was taking medication pursuant to a previous court order. Dr. Parwatikar testified that medications would continue to benefit respondent. He told the court that when not medicated, respondent has delusions in which he believes that other people are controlling his mind and body and are trying to harm him. When not medicated, respondent has exhibited aggressive behavior and harmed others as a result of his delusional thinking. When he takes the medication, respondent is able to communicate, instead of acting out his aggressions.

Dr. Parwatikar testified about the general side effects of the medication respondent was taking. The side effects generally include tremors, dryness of mouth, and occasional difficulty producing saliva. Very rare symptoms include neuroleptic malignancy syndrome or tardive dyskinesia. Dr. Parwatikar testified that respondent had been monitored for those rare side effects and that he exhibited none. He opined that respondent lacks the capacity to decide whether he should take the medication. He explored less restrictive alternatives to medication. These were not helpful.

Respondent also testified. He told the court that he was not "born with mental problems" and is not a drug user. He testified that the medication causes him to develop hives and blurs his vision. He does not feel that he needs the medication. He believes he is in full control of aggressive behavior. He says that the medication makes him vulnerable to other people taking advantage of him.

At the close of the hearing, the court found that the State had proven the factors necessary to grant the petition. The court executed a preprinted order. The order stated: "James Williams shall receive psychotropic medication to be administered by members of the clinical staff at Chester Mental Health, whose licenses allow them to administer psychotropic medications pursuant to Illinois Law. The above-named staff is authorized to administer psychotropic medications to the above[-]named recipient for a period not to exceed 90 days."

In this appeal, respondent urges us to reverse the order of the trial court because there was a failure to strictly comply with section 2—107.1 of the Code. 405 ILCS 5/2—107.1 (West Supp. 1997).

■ Persons who suffer from mental illness have constitutionally protected liberty interests that permit them to refuse involuntary commitment (*In re James*, 191 Ill. App. 3d 352, 547 N.E.2d 759 (1989)) and the administration of psychotropic medications (*In re C.E.*, 161 Ill. 2d 200, 214, 641 N.E.2d 345, 351 (1994)). Any legislation that infringes upon these liberty interests must bear an important and substantial relationship to the State's interest as *parens patriae* in providing for mentally ill people who present a danger to themselves or others or who lack the capacity to make informed decisions concerning psychotropic medications. *In re James*, 191 Ill. App. 3d 352, 547 N.E.2d 759; *In re C.E.*, 161 Ill. 2d at 214.

■ Courts must scrutinize legislation that permits the involuntary administration of psychotropic medications to persons afflicted with mental illness, because of concerns about the substantially invasive nature of psychotropic substances, the significant side effects associated with those medications, and the recognition that psychotropic substances may be misused by medical personnel as a means of patient control rather than treatment. *In re C.E.*, 161 Ill. 2d at 214-15. Because the involuntary administration of medications affects important liberty interests, strict compliance with statutory procedures is required.

■ Section 2—107.1(a)(4) of the Code establishes strict standards that must be satisfied by clear and convincing evidence before medication can be ordered over the objection of a patient. 405 ILCS 5/2—107.1(a)(4) (West Supp. 1997); *In re C.E.*, 161 Ill. 2d at 217. Section 2—107.1(a)(6) of the Code requires that specific information be provided in any order authorizing the involuntary administration of psychotropic medication. 405 ILCS 5/2—107.1(a)(6) (West Supp. 1997). Illinois courts have required strict compliance with the Code's procedural safeguards to insure that the mental health system does not become a tool to oppress rather than to serve society. *In re Long*, 203 Ill. App. 3d 357, 364, 561 N.E.2d 290, 294 (1990).

In this case, respondent claims that the order violated the statute because it failed to include the specific medications and range of dosages authorized by the court. The applicable provision of the statute that dictates the content of court orders is set forth as follows:

"(6) An order issued under this subsection (a) shall designate the persons authorized to administer the authorized involuntary treatment under the standards and procedures of this subsection (a). Those persons shall have complete discretion not to administer any treatment authorized under this Section. *The order shall also*

*specify the medications and the anticipated range of dosages that have been authorized."* (Emphasis added.) 405 ILCS 5/2—107.1(a)(6) (West Supp. 1997).

The previous version of this provision did not require the court order to specify the medications and dosage range. 405 ILCS 5/2—107.1(a)(6) (West 1996). This requirement was included in a legislative amendment that became effective December 1, 1997. Pub. Act 90—538, eff. December 1, 1997. Because the petition was filed in June 1998, we must determine whether the order complies with the provision, as amended.

The psychiatrist petitioned the court to permit qualified staff members to administer two different antipsychotic medications, as well as medications for depression and anxiety. The petition allowed for different methods of administration and a range of dosages. In its order granting the petition, the court did not identify the specific medications to be administered or the specific range of dosages. The State concedes that the court's order did not strictly comply with the statutorily mandated provisions of the Code, but it asserts that strict compliance is only required when the legislative intent cannot otherwise be achieved and that reversal is only required when the individual is prejudiced.

Given that serious liberty interests of respondent are infringed upon by this provision of the Code, we find the State's lackadaisical attitude towards compliance disturbing. It evidences a complete disregard for legislatively established procedures. The provisions of section 2—107.1 of the Code are "narrowly tailored to specifically address the State's concern for the well-being of those who are not able to make a rational choice regarding the administration of psychotropic medications." *In re C.E.*, 161 Ill. 2d at 218. The legislature identified the precise clinical conditions involved and established the circumstances that must be found and strict standards that must be satisfied before involuntary administration may be ordered. 405 ILCS 5/2—107.1 (West Supp. 1997).

We also note that the legislature specifically used the word "shall" in the provision which dictates the necessary components of an order authorizing the involuntary administration of psychotropic medications. 405 ILCS 5/2—107.1(a)(6) (West Supp. 1997). In our view, the use of the word "shall" in this provision mandates strict compliance with the provisions of the Code because this statutory provision was enacted to safeguard the liberty interests of those with mental illness and developmental disabilities. See *Stull v. Department of Children & Family Services*, 239 Ill. App. 3d 325, 606 N.E.2d 786 (1992). Simply stated, the legislature has determined that an involuntary recipient is

entitled to be notified of the specific medications and the range of dosages that are ordered. Specific orders provide some assurance that medications are properly administered for therapeutic purposes and protect against the misuse of medications to discipline or control the recipient. *In re C.E.*, 161 Ill. 2d at 217; *In re James*, 191 Ill. App. 3d 352, 547 N.E.2d 759.

■ In our view, the absence of strict compliance with this provision of the Code is inherently prejudicial because it destroys the balance between the liberty interests of the individual and the demands of an organized society. *In re C.E.*, 161 Ill. 2d at 217; *In re James*, 191 Ill. App. 3d 352, 547 N.E.2d 759. Further, the lack of an order specifying the medications and dosages precludes, as a practical matter, appellate review of a determination that the State has met its burden to prove that the benefits of particular medications outweigh the harm to respondent.

We find that the trial court's order is deficient because it does not specify the medications and the dosages to be administered. Because the court failed to comply with the strict letter of the statute, the order must be reversed and the cause remanded.

Respondent also contends that the court's order should be reversed because the State failed to prove by clear and convincing evidence that the benefits of the medication outweigh the harm. Although the first issue is dispositive of this case, we will briefly address this issue because it relates to the first and is likely to be raised again in this case.

Dr. Parwatikar stated that respondent had been receiving 40 milligrams of Prolixin twice a day pursuant to a prior court order. According to his report, Dr. Parwatikar apparently determined that it was necessary to increase the dosage of Prolixin to 100 milligrams per day and to administer an additional 100 milligrams every two weeks by injection. According to the report, he also proposed to administer Haldol if the Prolixin did not seem to reduce delusions, and to give antidepressant medications, Paxil and Prozac, to relieve anxiety. (Because the April 1, 1998, order was not made a part of the record, we do not know what medications and what dosages were previously ordered.)

A review of the transcript reveals that Dr. Parwatikar's testimony was general and vague. Dr. Parwatikar was not asked about and did not explain the rationale for a seemingly different treatment regimen than was previously ordered. He was not asked whether there are any side effects peculiar to these additional medications (Haldol, Paxil, Prozac) or whether there are potential complications posed by the interactions of these medications. Nor did his written report provide this information.

An order allowing the use of psychotropic drugs cannot be based upon a new regimen so poorly defined that the expert could not have meaningfully weighed the benefits and harm involved. *In re Perona*, 294 Ill. App. 3d 755, 767, 690 N.E.2d 1058, 1066-67 (1998). In the absence of testimony regarding the need for increased dosages of Prolixin and for the administration of additional antipsychotic and antidepressant medications, the trial court was without sufficient evidence from which to determine whether the benefits of the proposed medications outweighed the harm. *In re Kness*, 277 Ill. App. 3d 711, 720, 661 N.E.2d 394, 400 (1996).

Here, the trial court did not specify which medications it was authorizing Dr. Parwatikar to administer. Because the "new" medication regime was poorly defined in the record and because the trial court did not specifically authorize these additional medications in the order, the record is incomplete. Consequently, we are unable to determine whether the trial court erred in finding that the State proved its case by clear and convincing evidence.

For the foregoing reasons, the order of the circuit court of Randolph County is reversed, and the cause is remanded for a new hearing in which the court will consider whether it is necessary to receive additional evidence regarding the new treatment regimen proposed by the State (see *In re Watts*, 250 Ill. App. 3d 723, 620 N.E.2d 640 (1993)). Given our disposition of these issues, we need not address the remaining issue raised by respondent.

Accordingly, the order of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

KUEHN and HOPKINS, JJ., concur.