Nos. 2--07--0608 & 2--07--0609 cons.     Filed:  2-17-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re GLORIA C., Alleged to be a Person Subject to Involuntary Admission | ) ) ) ) ) | Appeal from the Circuit Court of Kane County. No. 07--MH--45 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Gloria C., Respondent-Appellant). | ) ) ) | Honorable James C. Hallock, Judge, Presiding. |

| | | |
|---|---|---|
| In re GLORIA C., Alleged to be a Person Subject to Involuntary Treatment | ) ) ) ) ) | Appeal from the Circuit Court of Kane County. No. 07--MH--55 |
| (The People of the State of Illinois, Petitioner-Appellee, v. Gloria C., Respondent-Appellant). | ) ) ) | Honorable James C. Hallock, Judge, Presiding. |

JUSTICE SCHOSTOK delivered the opinion of the court:

In this consolidated appeal, the respondent, Gloria C., appeals from the May 25, 2007, order of the circuit court of Kane County subjecting her to involuntary admission. She also appeals from the trial court's order of that same day subjecting her to the involuntary administration of psychotropic medication. On December 31, 2008, this court entered an order reversing the order subjecting the respondent to involuntary admission but affirmed the order subjecting her to the involuntary administration of psychotropic medication. In re Gloria C., Nos. 2--07--0608 & 2--07--0609 cons. (2008) (unpublished order under Supreme Court Rule 23). On September 30, 2009, the

Illinois Supreme Court directed that we vacate our order and reconsider the matter in light of its decision in In re Alfred H.H., 233 Ill. 2d 345 (2009), to determine if a different result was warranted. We therefore vacate our order and consider the respondent's contentions in light of Alfred H.H.

I. Appeal Number 2--07--0608

On May 4, 2007, pursuant to section 3--700 of the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/3--700 (West 2006)), the State filed a petition for the involuntary admission of the respondent. The petition alleged that the respondent was mentally ill and that because of her illness she was expected to inflict serious physical harm upon herself or another in the near future. The petition further alleged that, due to her illness, she was unable to provide for her basic physical needs so as to guard herself from serious harm without the assistance of family or outside help. The State's petition was accompanied by a certificate from Dr. Davis, opining that the respondent was mentally ill.

On May 25, 2007, the trial court conducted a hearing on the State's petition. The respondent's brother and sister testified as to her behavior and the circumstances that predated her admission to the Elgin Mental Health Center. Dr. Rao,[1] a psychiatrist at the Elgin Mental Health Center, testified that the respondent suffered from a mental illness, that being "bipolar disorder with psychotic features." Dr. Rao testified that as a result of her mental illness, the respondent was "hyper-verbal" and paranoid, had flight of ideas and could be irritable. Dr. Rao explained that when he interviewed the respondent on May 4, 2007, she stated that there was a girl following her and that

---

[1]Dr. Rao's actual name is Dr. Nageswara Nagarakanti. He was referred to as "Dr. Rao" during the hearings, and we will therefore refer to him as such herein.

she was not able to get a job because of her. She also stated that people in her neighborhood were throwing things on her car and had tapped her cable system.

Based upon the respondent's history of violence toward her sister, Dr. Rao opined that she was reasonably expected to inflict serious physical harm upon herself or someone else in the near future. Dr. Rao acknowledged that he had completed a certificate to this effect. He further opined that the respondent was unable to provide for her basic needs so as to guard herself from serious harm. Based upon her refusal of mental health treatment, Dr. Rao believed that the respondent was not able to seek medical attention. He opined that inpatient hospitalization at Elgin Mental Health Center was the least restrictive environment that was appropriate for the respondent.

Following the hearing, the trial court found that, due to a mental illness, the respondent was reasonably expected to inflict serious physical harm upon herself or another in the future and was not capable of providing for her basic physical needs so as to guard herself from serious physical harm. After the State filed a treatment plan, the trial court ordered that the respondent be involuntarily admitted to the Elgin Mental Health Center for a period not to exceed 90 days. The respondent thereafter filed a timely notice of appeal.

Because the 90-day period of involuntary commitment at issue in this appeal has expired, we begin with the threshold issue of whether the mootness doctrine precludes our review of the merits of this appeal. In re Robert S., 213 Ill. 2d 30, 45 (2004). "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." In re J.T., 221 Ill. 2d 338, 349-50 (2006). Generally, courts of review do not decide moot questions, render advisory opinions, or consider issues where the result will not be

affected regardless of how those issues are decided. In re Barbara H., 183 Ill. 2d 482, 491 (1998). Reviewing courts, however, recognize exceptions to the mootness doctrine, such as (1) the public-interest exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties, (2) the capable-of-repetition exception, applicable to cases involving events of short duration that are capable of repetition, yet evading review, and (3) the collateral-consequences exception, applicable where the order could return to plague the respondent in some future proceedings or could affect other aspects of the respondent's life. In re Alfred H.H., 233 Ill. 2d 345, 355-62 (2009); In re Val Q., No. 2--08--0132, slip op. at 5 (November 20, 2009).

In Alfred H.H., the supreme court determined that the respondent's appeal should be dismissed as moot because none of the exceptions to the mootness doctrine applied. Alfred H.H., 233 Ill. 2d at 364. However, Alfred H.H. is distinguishable from the case at bar because two of the mootness exceptions apply here. First, this being the respondent's first involuntary admission order, there are collateral consequences that may plague the respondent in the future. Compare In re Meek, 131 Ill. App. 3d 742, 745 (1985) (as the case appeared to be the respondent's first involuntary commitment, court found that the collateral-consequences exception applied), with Alfred H.H., 233 Ill. 2d at 362-63 (because the respondent had multiple prior involuntary commitments and was a felon, there were no collateral consequences that would stem solely from the present adjudication; every collateral consequence that could be identified already existed as a result of the respondent's previous adjudications and felony conviction). The evidence indicates that the respondent has a mental illness and is a danger to both herself and others. Thus, it appears that the respondent will very likely be subject to future proceedings and that her past involuntary admission could adversely

-4-

affect her at that time.  See <u>Alfred H.H.</u>, 233 Ill. 2d at 362 (collateral-consequences exception applies where reversal could provide a basis for a motion <u>in</u> <u>limine</u> that would prohibit any mention of the hospitalization during the course of another proceeding).  Accordingly, the collateral-consequences exception applies.

This case also falls within the capable-of-repetition exception.  This exception has two requirements.  "First, the challenged action must be of a duration too short to be fully litigated prior to its cessation."  <u>Alfred H.H.</u>, 233 Ill. 2d at 358.  "Second, there must be a reasonable expectation that *** 'the same complaining party would be subjected to the same action again.'"  <u>Alfred H.H.</u>, 233 Ill. 2d at 358, quoting <u>Barbara H.</u>, 183 Ill. 2d at 491.  This means that the present action and a potential future action must have a substantial enough relation that the resolution of the issue in the present case would have some bearing on a similar issue presented in a future case involving the respondent.  <u>Alfred H.H.</u>, 233 Ill. 2d at 360.

First, the challenged action was obviously too short to be fully litigated during the pendency of the order.  Second, at least one issue presented here--whether the State failed to comply with section 3--703 of the Code in seeking the respondent's admission--and the resolution thereof, would bear on a subsequent case involving the respondent.  It is reasonably likely that the resolution of this issue would affect future cases involving the respondent, because the respondent will likely again be subject to involuntary admission and the trial court will again have to address whether the State sufficiently complied with section 3--703 of the Code.  <u>Cf.</u> <u>Alfred H.H.</u>, 233 Ill. 2d at 360 (capable-of-repetition exception did not apply because respondent was challenging the sufficiency of the evidence, which would have no bearing on similar sufficiency-of-the-evidence issues presented in subsequent cases).  Review is, therefore, appropriate.

We find the first issue the respondent raises--whether the trial court's order of involuntary admission must be reversed because the State failed to comply with section 3--703 of the Code in seeking her admission--to be dispositive of this appeal. Specifically, the respondent argues that the State failed to file with the trial court a certificate executed by the psychiatrist,.

The Code's admission provisions must be strictly construed in favor of the respondent and must be strictly followed. In re Rovelstad, 281 Ill. App. 3d 956, 965 (1996). As the respondent's liberty interest is at stake, any failure by the trial court to follow the "strict letter of the statute" requires reversal by the reviewing court. In re Williams, 305 Ill. App. 3d 506, 511 (1999). Reversal is required even if the respondent fails to show any actual prejudice resulting from the error. In re Michael D., 306 Ill. App. 3d 25, 28 (1999). This is because the trial court's failure to strictly comply with the Code upsets the legislature's carefully crafted balance between the individual's interest in liberty and society's interest in caring for those who are unable to care for themselves. Rovelstad, 281 Ill. App. 3d at 964.

Section 3--703 of the Code provides:

"If a certificate executed by a qualified examiner, clinical psychologist, or a physician who is not a psychiatrist was filed, the respondent shall be examined by a psychiatrist. The examining physician, clinical psychologist, qualified examiner or psychiatrist may interview by telephone or in person any witnesses or other persons listed in the petition for involuntary admission. If, as a result of an examination, a certificate is executed, the certificate shall be promptly filed with the court." 405 ILCS 5/3--703 (West 2006).

Here, Dr. Rao testified that he examined the respondent and that he had completed a certificate. However, the State did not file this certificate with the trial court. As such, section 3--

703 of the Code was not complied with, and the trial court's order directing the respondent to be involuntarily admitted must be reversed. See Williams, 305 Ill. App. 3d at 511.

In so ruling, we reject the State's argument that the respondent forfeited this issue by failing to raise it before the trial court. In making this argument, the State relies on In re Hannah E., 376 Ill. App. 3d 648 (2007), and In re Luker, 255 Ill. App. 3d 367, 370 (1993). Neither of these cases, however, addressed the State's failure to file a certificate in compliance with section 3--703 of the Code. See Hannah E., 376 Ill. App. 3d at 658-660 (respondent failed to raise timely objections and thus waived issues of trial court's granting continuances and whether certificate had been properly executed); Luker, 255 Ill. App. 3d at 370 (respondent waived issue of the validity of the notice of the hearing). As such, we decline to find that the respondent has forfeited this issue. See Williams, 305 Ill. App. 3d at 511.

We also reject the State's argument that reversal is unnecessary because the record reveals that the purpose of section 3--703 was complied with. Specifically, the State argues that the purpose of the statute is to ensure that, before a person is involuntarily admitted, a psychiatrist examines that person to ensure that admission is necessary. The State notes that Dr. Rao testified that he had examined the respondent and had even executed a certificate that indicated that the respondent was mentally ill and unable to provide for her basic needs so as to guard herself from serious harm. The State contends that the failure to file this certificate with the trial court should not be considered reversible error.

The State raised a similar argument in Rovelstad. There, the State conceded that the requisite certificate was not filed. However, the State maintained that a reasonable reading of the treating doctor's testimony revealed that the Code's purpose had been complied with. The State therefore

argued that its violation of the Code was a mere technical deficiency that did not require reversal. Rovelstad, 281 Ill. App. 3d at 964. We rejected the State's argument, explaining that the Code's procedural safeguards were to be strictly construed in favor of the respondent and that the Code's language requiring the filing of the certificate was mandatory. Rovelstad, 281 Ill App. 3d at 965-66. Here, as in Rovelstad, the State's failure to file a mandatory certificate cannot be considered harmless error. See Rovelstad, 281 Ill. App. 3d at 966. Therefore, the trial court's order of involuntary admission must be reversed. Rovelstad, 281 Ill. App. 3d at 966.

## II. Appeal Number 2--07--0609

On May 18, 2007, the State filed against the respondent a petition for the involuntary administration of psychotropic medication. The trial court conducted a hearing on this petition on May 25, 2007. Dr. Rao testified that the respondent was suffering from "bipolar disorder with psychotic features" and was exhibiting paranoid delusions. He had provided her with written materials on the risks and benefits of the psychotropic medication.

The respondent informed him that she was concerned that psychotropic medication might cause weight gain; she therefore wished to take only a vitamin. She also denied having a mental illness and indicated that she did not wish to take any medication. The respondent had never taken psychotropic medication until she voluntarily took Risperdal (a psychotropic medication listed in the petition for involuntary medication) the night before the hearing. The respondent indicated that the drug made her feel drowsy.

Dr. Rao opined that due to the respondent's mental illness, she had experienced a deterioration of functioning. He described her as having periods of depression and currently being paranoid. He

believed that the respondent was not able to function and get a job. Dr. Rao explained that, although she had worked in the past, he did not believe that she was able to work now due to her paranoia.

Dr. Rao believed that the respondent lacked the capacity to make a reasoned decision about her medication. This was due to her delusions and poor insight. However, he stated that on the night before the hearing, the respondent had agreed to take medication for one day to see what would happen. The amount she took was not at a therapeutic level. In talking with her before the hearing, the respondent told him that the medication (Risperdal) did not help her and caused her to feel drowsy. He told her that any improvement would take at least several days and that drowsiness was a common side effect in the beginning. The respondent insisted, however, that she did not have a mental illness and needed only a vitamin.

Dr. Rao testified that the respondent understood that she had a choice in taking medication. However, she did not have the ability to understand the available options and their advantages and disadvantages because of her delusional thinking and lack of insight.

Dr. Rao also testified as to interviews he had with the respondent. She would not listen to what he was explaining or she would switch to another topic. She would continually state to him that she did not have a mental illness and that there was no reason for her to take psychotropic medication.

Dr. Rao requested authorization to administer psychotropic medication to the respondent because he believed that the benefits of such medication would clearly outweigh the possible harm. Dr. Rao requested, in open court, the authority to administer the following medications: risperidone, oral dosage, 0.5 to 12 milligrams a day; Zyprexa (olanzapine), oral or intramuscular dosage, 5 to 30 milligrams a day; Seraquel (quetiapine), oral dosage, 25 to 800 milligrams a day; ariprazole, oral

dosage, 5 to 30 milligrams a day; ziprasidone, 20 to 160 milligrams a day; Risperdal Consta, intramuscular dosage, 25 to 50 milligrams every two weeks; Depakote (divalproex), oral dosage, 250 to 3,000 milligrams a day; lorazepam, oral or intramuscular dosage, 1 to 10 milligrams a day; sertaline, oral dosage, 50 to 200 milligrams a day; citalopram, oral dosage, 20 to 40 milligrams a day; and bupropion, oral dosage, 75 to 300 milligrams a day.

Dr. Rao testified that the most common side effects from the medications were drowsiness, dizziness, dry mouth, and fine tremors. Low blood pressure was also a possible side effect. Dr. Rao stated that he would be able to monitor these side effects in the hospital before the respondent was discharged.

Dr. Rao also requested authorization for testing and other procedures to ensure safe administration of the psychotropic medication. He requested authorization for a CBC (complete blood count), a CMP (comprehensive metabolic panel), a test for serum Tegretol or Depakote level, a thyroid test, a urinalysis, and an EKG (electrocardiogram).

On cross-examination, Dr. Rao testified that the respondent, who was overweight, was concerned about weight gain as a potential side effect of taking the medication. Dr. Rao noted, however, that the medication did not cause everybody to gain weight and that the respondent's diet, exercise, and other activities could be monitored. Dr. Rao also acknowledged that another potential side effect from psychotropic medication was neuroleptic malignant syndrome, which could result in death.

The respondent testified that she did not wish to take psychotropic medication. She explained that she had previously taken medication recommended by an allergist and that she was now trying to do without it. She testified that she last worked four years ago in a grocery store. She stopped

working when she contracted mumps. She had taken medication for that off and on for two years. Since working in the grocery store, she had applied for many different jobs.

The respondent testified that she had never threatened anyone. Although she had been involved in physical altercations in her life, she explained that she was always defending herself. She noted that the last time she had been in an altercation was when her mother had passed away. No one had been hurt in that altercation. She stated that she did not like being at the Elgin Mental Health Center because she liked being in charge of her own affairs, and she wished to be at home.

On cross-examination, the respondent testified that the Risperdal she took the previous night caused her to feel drowsy and have a severe headache. She further stated that the medication caused her to have a hard time communicating in open court due to the drowsiness. She had informed Dr. Rao about past severe reactions to certain medications such as penicillin and other antibiotics, which had caused her throat to close and caused her to be sent to a hospital. She testified that the past allergic reactions to medication had a bearing on her present refusal to take psychotropic medication. She further testified that she had read information regarding possible side effects from psychotropic medication during her current hospitalization.

Following closing arguments, the trial court made several findings. The trial court found that the respondent's need for the administration of psychotropic medication had been demonstrated by clear and convincing evidence. The trial court found Dr. Rao's testimony to be very credible while the respondent's testimony was "rambling." It also noted that she had continuously banged on her chair throughout the hearing. Furthermore, she did not appear drowsy during the hearing. The trial court found that her taking one dose of medication on the eve of the hearing did not constitute a reversal of her refusal to take the medication. The trial court determined that the respondent's mental

illness had existed for a period marked by the continuing presence of deterioration and suffering. The trial court found that the benefits of the psychotropic medication outweighed the harm and that the respondent lacked the capacity to make a reasoned decision about the medication.

Based on these findings, the trial court ordered that the respondent be subject to the involuntary administration of psychotropic medication for a period of 90 days. The medication would be administered by the clinical staff at the Elgin Mental Health Center. The trial court also authorized the testing and monitoring of the respondent for the safe administration of the medication. Following the trial court's order, the respondent filed a timely notice of appeal.

At the outset, we note that this case is not moot, because it is the first time that the respondent has been subject to the involuntary administration of psychotropic medication. Therefore, the collateral-consequences exception to the mootness doctrine applies. See Val Q., slip op. at 5-6. We will therefore consider the merits of the respondent's appeal.

Respondent first argues that the State failed to prove by clear and convincing evidence that she lacked the capacity to make a reasoned decision about the medication. Section 2--107.1 of the Code (405 ILCS 5/2--107.1 (West 2006)) delineates the nonemergency circumstances under which psychotropic medication may be administered against the wishes of the recipient. Section 2--107.1(a--5)(4) directs that the forced administration of psychotropic medication is authorized only if the court finds evidence of each of the following elements, by clear and convincing proof:

"(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (I) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the

mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2--107.1(a--5)(4) (West 2006).

Clear and convincing evidence is defined as the quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the veracity of the proposition in question. In re Israel, 278 Ill. App. 3d 24, 35 (1996). As a reviewing court, we give great deference to the trial court's factual findings because the trial court stands in the best position to weigh the credibility of the witnesses; reversal is warranted only if the trial court's decision is against the manifest weight of the evidence. In re Lisa P., 381 Ill. App. 3d 1087, 1092 (2008). We do not find that to be the case here. The finding that the respondent lacked the capacity to make a reasoned decision regarding medication is supported by the evidence.

"[A] court should consider the following factors in determining whether an individual has the capacity to make a reasoned decision concerning the administration of psychotropic medication:

(1) The person's knowledge that he has a choice to make;

(2) The person's ability to understand the available options, their advantages and disadvantages;

(3) Whether the commitment is voluntary or involuntary;

(4) Whether the person has previously received the type of medication or treatment at issue;

(5) If the person has received similar treatment in the past, whether he can describe what happened as a result and how the effects were beneficial or harmful; and

(6) The absence of any interfering pathologic perceptions or beliefs or interfering emotional states which might prevent an understanding of legitimate risks and benefits."

Israel, 278 Ill. App. 3d at 37.

When assessing these factors, courts should not find any one factor dispositive and may consider any other relevant factors. Israel, 278 Ill. App. 3d at 37; see also Lisa P., 381 Ill. App. 3d at 1093. The testimony of a single expert witness is sufficient to meet the State's burden of proof. In re Perona, 294 Ill. App. 3d 755, 766 (1998). We have reviewed the record and find that Dr. Rao's opinion was adequately supported by the evidence.

First, the evidence shows that the respondent knew that she may choose whether to take medication. This is evident from the fact that she had agreed to take medication the night before the hearing but subsequently refused to take any more. This factor thus weighs in favor of the respondent.

Second, the record reflects that the respondent lacked the ability to understand the available options, including their advantages and disadvantages. Despite Dr. Rao's professional diagnosis, the respondent insisted that she did not have a mental illness and did not need to take pyschotropic medication. Dr. Rao, whose testimony the court credited over the respondent's, concluded that the respondent did not have the ability to understand the available options and their advantages and disadvantages because of her delusional thinking and lack of insight. See In re Schapp, 274 Ill. App. 3d 497, 499 (1995) (respondent lacked the capacity to make a reasoned decision about her medication because she lacked insight into her mental illness and had exceedingly poor judgment). While the fact of mental illness, standing alone, is not always a sufficient basis to conclude that a person lacks the capacity to make a reasoned decision regarding medical care, the failure to recognize one's mental illness may be evidence that the capacity is lacking. In re Gwendolyn N., 326 Ill. App. 3d 427, 428 (2001).

As to the third factor, the respondent's commitment was involuntary. Regarding the fourth factor, the respondent had not taken any psychotropic medication other than one dose of Risperdal the night before the hearing. Relying on In re Hatsuye T., 293 Ill. App. 3d 1046 (1997), the respondent argues that her willingness to take the dose of Risperdal demonstrates that she had the capacity to make a reasoned decision about taking medication. In Hatsuye, the respondent had previously consented to admission and treatment. Her doctor testified that had she not revoked it he would have continued to treat her based on the written consent and that her condition had not changed since she executed it. Hatsuye, 293 Ill. App. 3d at 1052. Based on that evidence, the reviewing court concluded that the respondent had the capacity to make her own decision as to medication. Hatsuye, 293 Ill. App. 3d at 1052.

Here, unlike the doctor in Hatsuye, Dr. Rao did not indicate that the respondent had the ability to make her own reasoned decision as to whether to take medication. Indeed, Dr. Rao specifically testified that the respondent lacked this capacity. Furthermore, although Dr. Rao recommended that the respondent take numerous medications, she took only Risperdal. This did not preclude the State from seeking the involuntary administration of the other drugs. See Israel, 278 Ill. App. 3d at 31-32 (explaining that it does not logically follow that just because a person consents to take one type of medication, the State is precluded from seeking to administer another type of medication). As to the Risperdal, she discontinued that after one day because it made her drowsy, an explanation that the trial court found not to be credible. Dr. Rao testified that the amount she had taken was insufficient to have any positive effects. Based on these facts, the respondent's willingness to take one dose of Risperdal does not demonstrate that the respondent had the capacity to make a reasoned decision about the medication.

As to the fifth factor, other than the single dose of Risperdal discussed above, the respondent had not received similar treatment in the past. Regarding the sixth factor, Dr. Rao testified that the respondent was suffering from pathologic perceptions or beliefs that prevented her from understanding the legitimate risks and benefits of the medication. This was evident because the respondent denied that she had a mental illness. See In re Kness, 277 Ill. App. 3d 711, 719 (1996) (recipient lacked ability to make reasoned decision about medication, in part because he did not recognize he was suffering from a mental illness). Indeed, the respondent herself testified that she did not need medication, only a vitamin.

In sum, the record supports the finding that the respondent failed to recognize that she was suffering from a mental illness and failed to recognize the benefits of taking the medication. Based

on this record, we conclude that the State presented sufficient evidence to support the trial court's finding that the respondent lacked the ability to make a reasoned decision.

The respondent next contends that the State failed to establish that the benefits of the medication outweighed the harm. The respondent notes that the State requested the involuntary administration of 12 different drugs. However, the State, through Dr. Rao's testimony, presented only three sentences as to the risks of the medication. The respondent insists that this testimony was insufficient for the State to meet its burden demonstrating that the medication would not do more harm than good.

In making this argument, the respondent relies on In re Williams, 305 Ill. App. 3d 506 (1999). In Williams, the treating psychiatrist, Dr. Parwatikar, testified that the respondent had been receiving 40 milligrams of Prolixin twice a day pursuant to a prior court order. He determined that it was necessary to increase the dosage of Prolixin to 100 milligrams per day and to administer an additional 100 milligrams every two weeks by injection. The psychiatrist proposed to administer Haldol if the Prolixin did not seem to reduce delusions, and to give antidepressant medications, Paxil and Prozac, to relieve anxiety. Williams, 305 Ill. App. 3d at 511.

The reviewing court found Dr. Parwatikar's testimony to be general and vague. The reviewing court explained that Dr. Parwatikar was not asked about and did not explain the rationale for a seemingly different treatment regimen than that which was previously ordered. Dr. Parwatikar was not asked whether there were any side effects peculiar to the additional medications or whether there were potential complications posed by the interactions of those medications. The reviewing court further noted that Dr. Parwatikar's report did not include that information. Williams, 305 Ill. App. 3d at 511. Based on the lack of information conveyed through Dr. Parwatikar's testimony and

his report, the reviewing court determined that the trial court lacked sufficient evidence to determine whether the benefits of the proposed medication outweighed the harm. Williams, 305 Ill. App. 3d at 512.

In response to the respondent's argument, the State argues that the instant case is more similar to In re Jeffers, 239 Ill. App. 3d 29, 36-37 (1992). In Jeffers, a doctor testified that Haldol would decrease the respondent's delusions and hallucinations to make her more comfortable in providing for herself. He further testified that the side effects could be countered by Cogentin. The reviewing court found this to be a sufficient factual basis that the benefits outweighed the harm. Jeffers, 239 Ill. App. 3d at 36. The reviewing court explained that an expert opinion provides prima facie proof, especially in the absence of any challenge at trial. Jeffers, 239 Ill. App. 3d at 36. The reviewing court further explained that because the respondent had failed to raise certain possible severe side effects at trial, the reviewing court would not now consider those side effects on appeal. Jeffers, 239 Ill. App. 3d at 37.

We believe that this case is more similar to Jeffers than to Williams. Here, unlike Dr. Parwatikar in Williams, Dr. Rao testified as to several possible side effects with the medication that he was recommending that the respondent take. He explained that the possible side effects included drowsiness, dizziness, dry mouth, and fine tremors. Some of the recommended medications could also cause anxiety, insomnia, and constipation and result in lower blood pressure. On cross-examination, Dr. Rao also testified that the medication could lead to weight gain and, in certain rare circumstances, a condition that leads to death. Dr. Rao also acknowledged that there was a higher risk of side effects due to the respondent's age (51), but this was why he intended to start with a small dosage and gradually increase it. He also explained that blood work would be done before

administering the medication and that the respondent would be monitored. Even with these possible risks, however he opined that the potential benefits were higher. We believe that such testimony was neither "general" nor "vague" and that the trial court could properly determine that the benefits of the medications outweighed any potential harm. See Jeffers, 239 Ill. App. 3d at 36-37.

The respondent's last argument on appeal is that the State failed to prove by clear and convincing evidence that the tests and procedures authorized by the court were essential to the safe administration of the medication. The respondent argues that Dr. Rao's testimony was not supported by any factual basis on that point. As such, the respondent contends that the State failed to present any evidence that rose to the level of real, clear, and convincing. We disagree.

Dr. Rao testified that he was seeking authorization for a thyroid test, a urinalysis, a CBC, a CMP, a test for serum Tegretol or Depakote level, and an EKG. He explained that not all of the medications could cause weight gain and that the respondent's diet and exercise could be adjusted to compensate. Furthermore, the respondent would be monitored as the medication was provided to her. Based on this testimony, and the respondent's lack of cross-examination on this point (see Jeffers, 239 Ill. App. 3d at 36-37), the State presented sufficient evidence that the tests and procedures Dr. Rao intended to have performed were necessary for the safe administration of the psychotropic medication.

### III.   Conclusion

For the foregoing reasons, in appeal number 2--07--0608, we reverse the judgment of the circuit court of Kane County that the respondent be subject to involuntary admission. In appeal number 2--07--0609, we affirm the trial court's judgment that the respondent be subject to the involuntary administration of medication.

Nos. 2--07--0608 & 2--07--0609 cons.

No. 2--07--0608--Reversed.

No. 2--07--0609--Affirmed.

O'MALLEY and JORGENSEN, JJ., concur.