# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Bobby F.*, 2012 IL App (5th) 110214

---

| | |
|---|---|
| Appellate Court Caption | *In re* BOBBY F., Alleged to Be a Person Subject to Involuntary Treatment With Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. Bobby F., Respondent-Appellant). |
| District & No. | Fifth District<br>Docket No. 5-11-0214 |
| Rule 23 Order filed<br>Motion to publish granted | April 16, 2012<br><br>June 1, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order for the involuntary administration of psychotropic medication to respondent was reversed on the ground that the order lacked the specificity required by the statute with regard to the medications and dosages, notwithstanding the designation of a "therapeutic dose," since the involuntary administration of medication for mental health purposes involves fundamental liberty interests and 2-107.1(a-5)(6) of the Mental Health and Developmental Disabilities Code requires a specification of the medications and the anticipated range of the dosages authorized. |
| Decision Under Review | Appeal from the Circuit Court of Randolph County, No. 11-MH-39; the Hon. Richard A. Brown, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Barbara A. Goeben and Veronique Baker, both of Guardianship and Advocacy Commission, of Alton, for appellant.

Randall Rodewald, State's Attorney, of Chester (Patrick Delfino, Stephen E. Norris, and Neha Sharma, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE WEXSTTEN delivered the judgment of the court, with opinion.

Presiding Justice Donovan and Justice Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1      The respondent, Bobby F., appeals from an order of the circuit court of Randolph County granting the State's petition to involuntarily administer psychotropic medication to him. On appeal, the respondent argues that the court's decision should be reversed because, *inter alia*, the circuit court's order violated the respondent's due process rights and failed to specify the dosage for all the medications authorized. We reverse.

¶ 2                      FACTS

¶ 3      The respondent is a 31-year-old male who was admitted to Chester Mental Health Center on January 8, 2011, after transferring from Singer Mental Health Center. The respondent has 12 times been admitted to the Department of Human Services, including 6 admissions to Chester Mental Health Center.

¶ 4      On April 4, 2011, Dr. Terrence Casey, a Chester Mental Health Center psychiatrist, filed a petition alleging that the respondent was a person subject to the involuntary administration of psychotropic medication pursuant to section 2-107.1 of the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/2-107.1 (West 2010)). In the form petition, Dr. Casey alleged, *inter alia*, that the respondent was given a written list of side effects. Dr. Casey added the following information to the petition:

> "Antipsychotic medications are used to decrease and remit psychotic symptoms such as delusions as well as alleviate disorganized and confused thought process. They also reduce the possibility of hostile behaviors and control[ ] his aggressive and violent acting out behaviors. They can cause shakes and muscle spasms, sedation, and occasionally they can cause serious complications such as Neuroleptic Malignant Syndrome and Tardive Dyskinesia[;] however these can be detected and monitored to prevent serious

-2-

dysfunction or discomfort, with the administration of medications to alleviate side effects, as well as using the least [*sic*] effective doses of the medication.

Mood stabilizers are used to stabilize mood, alleviate impulsivity as well as control[ ] aggressive behaviors. They also augment the effects of antipsychotic medications. Side effects include sedation, dizziness, upset stomach, blood cell suppression, effects on liver function and thyroid function but this can be offset by observation, regular laboratory work-up including blood levels to guide the best dose and to discontinue them if necessary.

Anxiolytic medications are used to alleviate anxiety, tension, restlessness, and agitation. They could cause sedation, incoordination, memory difficulties and dependence but this can be assessed by ongoing monitoring, and alleviated by using the minimum effective doses and discontinuing if side effects are intolerable."

¶ 5    On April 13, 2011, at the hearing on the petition, Dr. Casey testified that the respondent suffered from "bipolar one disorder, most recent episode manic, severe with psychotic features." Dr. Casey testified that the respondent exhibited severe mania, grandiose delusions, very rapid pressured speech, and tangential flight of ideas. Dr. Casey testified that since being admitted to the hospital, the respondent had deteriorated, had verbally threatened staff or peers, and had caused the staff to impose seclusion and restraints.

¶ 6    Dr. Casey testified that he had recommended the medications Zyprexa and Depakote to the respondent, but the respondent had refused to sign a consent for Zyprexa, stating that he preferred Abilify. Dr. Casey testified, however, that he had previously prescribed the maximum dose of Abilify, and the respondent continued to deteriorate. Dr. Casey testified that the respondent had, in the past, made significant improvement when prescribed Zyprexa and, while on a Zyprexa regimen, had twice been discharged. Dr. Casey testified that most recently he had administered Zyprexa as an emergency-enforced medication for the respondent and had noticed that the respondent's speech became less pressured and less rapid, and the staff had reported his improvement.

¶ 7    Dr. Casey testified that the respondent lacked the mental capability to understand his need for medication. Dr. Casey testified that he had given the respondent a written list of any side effects. Dr. Casey testified that the benefits of the respondent taking his medication outweighed the possible side effects. Dr. Casey testified that less restrictive services were provided to the respondent but were determined to be inappropriate because of his aggressive behavior.

¶ 8    When asked the exact medications he was seeking the court to enforce, Dr. Casey replied: "Well, his current medications, he's on valproic acid, the Depakote. He gets 1500 milligrams in the morning–I'm sorry–2,000 milligrams in the morning and 1500 milligrams at night. His blood level is therapeutic. It's 93.6 on that medication. He's on Clonazepam 2 milligrams t.i.d., three times a day. We have his p.r.n. of Haldol and Ativan, five Haldol, two Ativan. And he's on Zyprexa. And right now that's being titrated up. He's–right now he gets ten in the morning, five at night, and ten at–ten in the morning, five in the afternoon, and ten at night."

Dr. Casey testified that although the respondent complained of photophobia, an extreme

aversion to light, as a side effect of Zyprexa, Dr. Casey did not witness any evidence of photophobia in the respondent.

¶ 9 The respondent testified that he was "agreeable to taking Depakote [and] Clonazepam." The respondent testified that he was experiencing side effects, *i.e.*, lethargy, low blood sugar, and weight loss, as a result of taking Zyprexa. The respondent testified that he was willing to take Abilify.

¶ 10 At the end of the hearing, the circuit court found that the respondent was a person who suffered from a mental illness, diagnosed as bipolar disorder, and exhibited a deterioration in his ability to function; that the benefits of administering medication outweighed the harm; that the respondent lacked the capacity to make a reasoned decision about his treatment; that the physicians had attempted less restrictive services that were found to be inappropriate; and that testing was necessary for safe administration of the treatment. The court found that the respondent understood the benefits and side effects of treatment. The circuit court concluded that the respondent was a person subject to the involuntary administration of psychotropic medication.

¶ 11 Accordingly, on April 13, 2011, the circuit court entered its written order for the involuntary administration of psychotropic medication. The circuit court ordered that the respondent receive the following psychotropic medication:

| "Olanzapine [Zyprexa] | up to 30 mg per day |
| VPA [valproic acid, or Depakote] | up to therapeutic dose |
| Clonazepam | up to 10 mg per day |
| Haldol | up to 100 mg per day |
| Ativan | up to 10 mg per day." |

On May 11, 2011, the respondent filed a timely notice of appeal.

¶ 12                                    ANALYSIS

¶ 13 Initially, we recognize that this case is moot. Section 2-107.1(a-5)(5) of the Code provides that in no event shall an order for the involuntary administration of psychotropic medication be valid for more than 90 days. 405 ILCS 5/2-107.1(a-5)(5) (West 2010). Here, the circuit court's order was entered on April 13, 2011. Because 90 days have passed since the entry of that order, it no longer has any force or effect, and this court cannot grant effectual relief to either party. However, because involuntary medication procedures involve matters of "substantial public concern," the period for involuntary administration of medication is of short duration, similar litigation will likely reoccur, and an authoritative determination is desirable, a review of the circuit court's order is appropriate under the public-interest exception to the mootness doctrine. *In re Robert S.*, 213 Ill. 2d 30, 45-46 (2004). We therefore address this appeal on the merits.

¶ 14 Pursuant to the fourteenth amendment's due process clause, persons who suffer from mental illness have constitutionally protected liberty interests that permit them to refuse the involuntary administration of psychotropic medications. *In re C.E.*, 161 Ill. 2d 200, 213 (1994); *In re Williams*, 305 Ill. App. 3d 506, 509 (1999). Because involuntary mental health

-4-

services, including the involuntary administration of psychotropic drugs, involve a massive curtailment of liberty (*In re Robert S.*, 213 Ill. 2d at 46), Illinois courts have repeatedly recognized the importance of "the procedures enacted by our legislature to ensure that Illinois citizens are not subjected to such services improperly." *In re Barbara H.*, 183 Ill. 2d 482, 496 (1998). "Courts must scrutinize legislation that permits the involuntary administration of psychotropic medications to persons afflicted with mental illness, because of concerns about the substantially invasive nature of psychotropic substances, the significant side effects associated with those medications, and the recognition that psychotropic substances may be misused by medical personnel as a means of patient control rather than treatment." *In re Williams*, 305 Ill. App. 3d at 509. Strict compliance with the Code's procedural safeguards is required to ensure that the mental health system does not become a tool to oppress rather than to serve society. *In re John R.*, 339 Ill. App. 3d 778, 785 (2003) ("The Code's procedural safeguards are not mere technicalities but essential tools to safeguard these liberty interests.").

¶ 15 "The petitioner bears a substantial burden of proof that the trial judge should force the petitioner to meet with real, clear, and convincing evidence before the court enters an order infringing on the respondent's important liberty interests." *Id.* "Clear and convincing evidence has been defined as that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *Id.* at 781. "A reviewing court will not reverse an order allowing the involuntary administration of psychotropic medication unless the trial court's findings are against the manifest weight of the evidence." *Id.* "A judgment is considered against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence." *Id.*

¶ 16 Pursuant to the Code, psychotropic medications may not be administered to an adult recipient of mental health services against his will unless the State proves the following by clear and convincing evidence:

"(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item (B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the

treatment." 405 ILCS 5/2-107.1(a-5)(4)(A) to (a-5)(4)(G) (West 2010).

"The trial court must find evidence of each of the elements to authorize the forced administration of psychotropic medication." *In re Louis S.*, 361 Ill. App. 3d 774, 779 (2005).

¶ 17 The respondent argues that the State failed to provide clear and convincing evidence that the respondent lacked the decisional capacity to make a reasoned decision about the proposed treatment (405 ILCS 5/2-107.1(a-5)(4)(E) (West 2010)) because the State failed to prove that it had complied with section 2-102(a-5) of the Code (405 ILCS 5/2-102(a-5) (West 2010)).

¶ 18 Section 2-102(a-5) of the Code requires a treating physician seeking to administer psychotropic medication to "advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated." 405 ILCS 5/2-102(a-5) (West 2010). The recipient has the capacity to make treatment decisions for himself when, based upon the conveyed information concerning the side effects, risks, benefits, and reasonable alternatives to the proposed treatment, he makes a reasoned choice to either accept or refuse the treatment. *In re John R.*, 339 Ill. App. 3d at 782-83 ("where an individual has the capacity to make the treatment decision for himself, psychotropic medication may not be forced upon him even if it is clearly in that individual's best interest"). If, however, "the patient is not informed of the risks and benefits of the proposed medication, an order for the involuntary administration of medication must be reversed because the respondent has not been provided with the necessary information from which he could make a reasoned decision." *Id.* at 783.

¶ 19 "Even where the physician has verbally advised the patient of the benefits and side effects of the medication and the patient has informed the physician that he chooses not to take the medication, the patient is still entitled to receive the written notification required by section 2-102 of the Code." *Id.* "Verbal notification is not enough to ensure a respondent's due process rights." *Id.* Written notice takes on great importance because it provides the respondent with the opportunity to review the information at a time and in a manner of his choosing. *In re Louis S.*, 361 Ill. App. 3d at 780-81.

¶ 20 "Nor is harmless error analysis appropriate to this question." *In re John R.*, 339 Ill. App. 3d at 783. "The procedural safeguards of the Code must be strictly construed in favor of the respondent, and strict compliance therewith is compelling, because liberty interests are involved." *Id.* at 783-84. "The failure to comply with the procedural rules requires the reversal of court orders authorizing involuntary treatment." *Id.* at 784. "The rights provided in the statute were not placed in the Code to ensure that a respondent understands a medication's side effects but to ensure that a respondent's due process rights are met and protected." *Id.*

¶ 21 In this case, Dr. Casey testified that he discussed with the respondent the need to take medication and that he gave him a written list of side effects. Not only does section 2-102(a-5) of the Code require written notification of the proposed treatment's side effects, it also requires written notifications of the risks, benefits, and alternatives to the proposed treatment. See *In re Laura H.*, 404 Ill. App. 3d 286, 290-91 (2010) (even though the physician testified that the respondent received a written list of side effects, the involuntary-treatment order was

reversed because no evidence at trial showed the respondent received written notice of the risks, benefits, and alternatives to the proposed treatment). The State did not present evidence that the respondent received written information about the risks, benefits, and alternatives to the proposed treatment. Without evidence that the respondent received the required written notification, the circuit court erred by ordering him to be subjected to the involuntary administration of medication. See *In re A.W.*, 381 Ill. App. 3d 950, 957 (2008) (involuntary-treatment order reversed where the physician did not testify that she had advised the respondent in writing of the risks, benefits, or alternatives to the proposed treatment); *In re Louis S.*, 361 Ill. App. 3d at 780 (involuntary-treatment order reversed where the testifying physician did not state that he attempted to give the respondent a written statement regarding benefits of proposed medications or possible side effects); *In re John R.*, 339 Ill. App. 3d at 784 (involuntary-treatment order reversed where the respondent was given written notice with respect to only one of the medications for which an order was sought).

¶ 22    The State counters that the written petition itself lists the benefits and side effects of the medications, and because the respondent received a copy of the petition, the petition itself can fulfill the requirement that the respondent receive a written copy of the risks and benefits of the proffered medications.

¶ 23    The respondent's receipt of this information, which did not specify the risks, benefits, side effects, and alternatives to the proposed medications to be prescribed, was nevertheless not admitted into evidence at the involuntary-treatment hearing. "A reviewing court must determine sufficiency of the evidence at the hearing based upon the evidence presented to the trial court." *In re Laura H.*, 404 Ill. App. 3d at 291 (because a stack of papers in the common-law record regarding the medications was not admitted into evidence at the hearing, those papers could not support the involuntary-treatment order). Because the State failed to present evidence that the respondent was informed in writing of the risks and benefits of the proposed treatment, as well as alternatives to the proposed treatment, the circuit court's involuntary-treatment order was against the manifest weight of the evidence. See *In re A.W.*, 381 Ill. App. 3d at 957 (involuntary-treatment order reversed even though the petition seeking to involuntarily treat the respondent indicated that the physician had advised the respondent, in writing, of the risks and benefits of the proposed treatment); *In re Louis S.*, 361 Ill. App. 3d at 780 (involuntary-treatment order reversed even though the petition stated that the physician advised the respondent, in writing, of the risks and benefits of the proposed treatment).

¶ 24    The respondent argues that the circuit court's order also violated the Code by failing to specify the range of dosages for all of the medications ordered. The State counters that the respondent has waived this issue for failing to object in the trial court, and if not waived, the circuit court's failure to specify a numerical range of dosages does not require reversal.

¶ 25    The State is correct that the respondent failed to raise this issue in the trial court. An issue is waived on review if it is not raised both at trial and in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, pursuant to the plain error doctrine, this court may address a waived issue if the evidence is closely balanced or the error affects substantial rights. Ill. S. Ct. R. 615(a). The involuntary administration of medication for mental health purposes involves fundamental liberty interests. *In re Frances K.*, 322 Ill. App. 3d 203, 208

(2001). Further, the waiver rule is a limitation on parties and not on reviewing courts. See *Welch v. Johnson*, 147 Ill. 2d 40, 48 (1992) (reviewing court may, in furtherance of its responsibility to reach a just result, override considerations of waiver). Accordingly, we will consider this issue on the merits. See *In re Len P.*, 302 Ill. App. 3d 281, 286 (1999) (reversing involuntary-treatment order despite waiver because the trial court failed to specify the type and dosage of medication).

¶ 26   As noted, in mental health cases, strict compliance with the Code is compelling because liberty interests are involved. *In re Frances K.*, 322 Ill. App. 3d at 208. "Noncompliance with statutory provisions of the Code renders a judgment entered under such circumstances erroneous and of no effect." *Id.* In narrowly tailoring the provisions of section 2-107.1 of the Code to specifically address the State's concern for the well-being of those who are not able to make a rational choice regarding the administration of psychotropic medications, the legislature established the strict standards that must be satisfied before involuntary administration may be ordered. *In re Williams*, 305 Ill. App. 3d at 510. Section 2-107.1(a-5)(6) of the Code provides that an order authorizing the use of psychotropic medications on a nonemergency involuntary basis must "specify the medications and the anticipated range of dosages that have been authorized." 405 ILCS 5/2-107.1(a-5)(6) (West 2010). In using the word "shall" in section 2-107.1(a-5)(6), the legislature mandates strict compliance, because this statutory provision was enacted to safeguard the liberty interests of those with mental illness and developmental disabilities. *In re Williams*, 305 Ill. App. 3d at 510. "Simply stated, the legislature has determined that an involuntary recipient is entitled to be notified of the specific medications and the range of dosages that are ordered." *Id.* at 510-11. "Specific orders provide some assurance that medications are properly administered for therapeutic purposes and protect against the misuse of medications to discipline or control the recipient." *Id.* at 511.

¶ 27   "[T]he absence of strict compliance with this provision of the Code is inherently prejudicial because it destroys the balance between the liberty interests of the individual and the demands of an organized society." *Id.* "Further, the lack of an order specifying the medications and dosages precludes, as a practical matter, appellate review of a determination that the State has met its burden to prove that the benefits of particular medications outweigh the harm to respondent." *Id.*

¶ 28   In its order, the circuit court authorized the involuntary administration of, *inter alia*, "VPA [valproic acid, also known as Depakote] up to therapeutic dose." We find the circuit court's designation of a "therapeutic dose" to lack the specificity required pursuant to section 2-107.1(a-5)(6) of the Code (405 ILCS 5/2-107.1(a-5)(6) (West 2010)). Because the circuit court's order does not properly specify the dosage to be administered, its order is deficient. Because the court failed to comply with the strict letter of the statute, the order must be reversed. See *In re Williams*, 305 Ill. App. 3d at 510 (trial court's order found deficient because it did not specify the medications and the dosages to be administered).

¶ 29   Accordingly, we reverse the circuit court's order for the involuntary administration of nonemergency psychotropic medication. Given our resolution of these issues, we need not address the remaining arguments raised by the respondent.

¶ 30             CONCLUSION

¶ 31   For the foregoing reasons, we reverse the judgment of the circuit court of Randolph County.

¶ 32   Reversed.